Into The
United States District Court
For The Middle District of Louisiana

Preston Nelson
                (Petitioner)

Docket No.: _____

versus

Warden, Darrel Vannoy
                (Respondent)

## Memorandum in Support of Petitioner's 28 U.S.C. § 2254 Application

May it please the court:

Now into court comes Preston Nelson #428579, who respectfully submits this memorandum in order to establish the statement of facts and grounds for relief.

## Statement of Facts

The Elm Grove Murder of Ashley London and attempted Murder of Angela Jarvis (counts one and two) occurred on June 29, 2011 at the Elm Grove Apt. complex in Baton Rouge Louisiana (R.p. 202). There Officer Christopher Wright of East Baton Rouge Police Department found Ashley London dead in the passenger seat of a Honda Accord. Angela Jarvis was the driver who was not harmed (R.p. 202-203, 232-235). On the scene of the crime and at the V.C.U. H.Q., Ms. Jarvis was questioned but she did not know who was responsible for the incident (see Exhibit A). The next day, June 30, 2011, Lead Det. Christopher Rudy along with Det. Ross Williams questioned Ms. Jarvis about the incident again but Ms. Jarvis stated that she had no idea of who may have been involved (see Exhibit B). Eleven days later on July 11, 2011, Ms. Jarvis went back to the V.C.U. H.Q. for another interview but was unable to give any new information (see Exhibit B last paragraph). Two months later Ms. Jarvis identified petitioner as the driver involved (see R.p. 65/249).

1.

On July 29, 2011, Kevin Bowie and Jessica Parker was found shot dead inside of a vehicle on Kingfisher Ave. in Baton Rouge Louisiana. Det. Howard developed suspects (to include petitioner) from crimestopper tips (R.p. ___, 302). There was never any eye witness in this crime. Robin Johnson identified Petitioner as being involved in the Kingfisher double murder (R.p. 304, 431-434).

Darion Burkes testified to having purchased a gun from petitioner (R.p. 375). Patrick Lane testified that the gun was used in the Kingfisher incident (R.p. 401, 409).

The jury found petitioner guilty of all charges (R.p. 519). Sentencing (R.p. 19-20).

### Notice of Pro Se Filing

Petitioner request that this Court view this writ in accordance with the rulings held in Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed. 2d 652 (1972); and State v. Moak, 387 So. 2d 1108 (La. 1980); Pro Se petitioners not held to same stringent standards as a trained lawyer. Petitioner is a layman of the law and untrained in way of filings and proceedings of formal pleadings.

### Ground One

Appellate Counsel denied petitioner of his right to effective assistance of Counsel on Appeal. U.S. Const. 6th amend.

A.) Counsel on appeal before the La First Circuit Court of Appeal fail to raise issue of insufficient evidence of counts one and two (R.p. 22).

### Facts

Trial counsel preserved issue of insufficient evidence on motion for Judgement of Acquittal (see Exhibit G). Appellate counsel fail to raise the issue which petitioner has prepared in Ground #2 of this Memorandum (see Ground #2, insufficient evidence p. 3-6). The appeal would have had, with reasonable probability, a different outcome if the attorney would have adequately addressed the issue. Appellate counsel's deficient performance has led to a fundamentally unfair and unreliable result. U.S. v. Valencia-Quintana, 2007 WL 922228, (S.D. Tex. 3/22/07) (quoting U.S. v. Dovalina, 262 F.3d at 474-475).

2.

## Relief

Ground #2 (insufficient evidence) of this Memo. be reviewed and ruled on according to it's merits.

B.)

C.) Appellate counsel fail to raise issue, where trial court compelled petitioner to proceed in a trial of grievous crimes with assistance of an attorney with whom petitioner became embroiled in an irreconcilable conflict, denying petitioner of his right to choice of counsel.

## Facts

Appellate counsel fail to raise the issue which petitioner has prepared in Ground #4 of this Memo. (see Ground #4). The appeal would have had, with reasonable probability, a different outcome if the attorney would have adequately addressed the issue of Ground #4, which is a per se issue. Appellate counsel's deficient performance has led to a fundamentally unfair and unreliable result. U.S. v. Valencia-Quintana, 2007 WL 922228, (S.D. Tex. 3/22/07) (quoting U.S. v. Dovalina, 262 F. 3d at 474-475). U.S. Const. 6th, 14th amend..

## Relief

Ground #4 of this Memo. p.6-7 be reviewed and ruled on according to it's merits.

## Ground #2

Petitioner's U.S. Const. 14th right was violated where the evidence in the Elm Grove case (counts one and two R.p. 22) was insufficient.

## Facts

The entire Elm Grove murder case rested on the reliability of a identification made two months after the incident by the prosecutor's only witness, Angela Jarvis (R.p. 249). At trial Ms. Jarvis testified of her only opportunity to see the driver of the white truck, which she identified petitioner as the driver. Ms. Jarvis testified that she drove onto Brady St. to a stop sign where Brady St. and Fairchild St. meet (R.p. 255). The D.A. asked Ms. Jarvis, "did something happen at the stop sign?". Ms. Jarvis answered,

3.

saying that a white truck came and kind of stopped and was looking at her car (R.p. 255). The prosecutor also asked Ms. Jarvis, "Did you get a good look at who was driving that S.U.V.?". Ms. Jarvis answered, "Yes. We was face to face because I was driving and the truck was coming in. I was at the stop sign and truck was this way, and we was face to face and I looked him in his face and he looked me in mine." (R.p. 256).

Ms. Jarvis further testified that after the truck passed by her, she turned onto Fairchild st. then looked in her mirror and the truck was following behind her. Ms. Jarvis testified that she drove to her Elm Grove Apt. and parked where the truck pulled in behind her vehicle, the passenger of the truck then exited and approached Ms. Jarvis's vehicle shooting and killing Ashley London while Ms. Jarvis played dead. Jarvis testified that the shooter then got back in the truck and fled the scene with the driver (see entire examination of Ms. Jarvis R.p. 70/254-84/268).

Petitioner contends that Ms. Jarvis identified him as the driver of the truck, which Ms. Jarvis testified of only one opportunity at only one location to see the driver. At a stop sign on the corner of Brady st. and Fairchild st. where Ms. Jarvis claimed to have had her only opportunity to see the driver of the truck do not exist and never have. Brady st. and Fairchild st. are two neighborhood streets that are located in two totally different areas of the Baton Rouge City, they do not meet or cross at any point, they are 4.7 miles away from each other (see Exhibits C, E, F).

According to Ms. Jarvis's testimony, Ms. Jarvis came to a stop sign where Brady st. and Fairchild st. meet (R.p. 255). Ms. Jarvis testified that she came face to face with petitioner while she was at that stop sign, quoting, "We was face to face because I was driving and the truck was coming in. I was at the stop sign and the truck was this way--" (R.p. 256). Basically, Ms. Jarvis claimed to observed petitioner "coming in" from across or off of Fairchild st. onto Brady st. which allegedly gave Jarvis her only opportunity to see petitioner. Ms. Jarvis then testified that she turned off of Brady st. onto Fairchild (R.p. 256) which is physically impossible (see Exhibits C, F, ). Petitioner contends

4.

that it was also physically impossible for petitioner to have drove off or across Fairchild st. onto Brady st. then come face to face with Jarvis at a stop sign on the corner of Brady st. and Fairchild st. (Exhibits C, F).

The facts and proof clearly show that it was physically impossible for Ms. Jarvis to have observed that which she claimed occurred at a pin-point location that do not exist. Ms. Jarvis never had any other opportunity to see the driver of the truck but there at the non-existing location, the meeting point of "Brady st. and Fairchild st."

Petitioner contends that the evidence in support of his state conviction of counts one and two cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt, due to the fact that it was physically impossible for Ms. Jarvis to have observed that which she claimed occurred at a pin-point location that do not exist. U.S. v. Williams, 216 F.3d 611, (C.A. 7 (Ill) 2000); Jackson v. Virginia, 99 S.Ct. 2781, 443 U.S. 307.

In addition, Ms. Jarvis's testimony of seeing petitioner face in a physically impossible location is "Clear Error" which this court should take notice of. Exhibits C, D, E, and F is clearly objective evidence that contradicts the witness's only opportunity to see petitioner, which is the sole piece of evidence that convicted petitioner of counts one, two of the indictment (R.p. 22). The U.S. Supreme court held :
"Where documents or objective evidence contradict witness story or story itself is so internally inconsistent or implausible on it's face that reasonable fact finder would not credit it, Court may well find clear error even in finding purportedly based on credibility determination." Anderson v. City of Bessemer City, N.C., 105 S.Ct. 1504, 470 U.S. 564 (U.S.N.C. 1985).

Also see Exhibit A and B where Ms. Jarvis was unable to see any suspect.

<u>Relief</u>

Acquittal be granted and Sentence and Conviction reversed on counts one and two (R.p. 22).

B.) Petitioner's U.S. Const. 14th amend. right was violated, where Prosecutor failed to over come her burden of proving specific intent in the case of counts one and two of the indictment (R.p. 22), rendering the evidence insufficient.

## Facts

In the case of counts one and two (Rp. 22) the state had the burden of proving that petitioner had specific intent to kill or cause great bodily harm to Angela Jarvis and Ashley London, which is required by La. C. Cr. P. Vis. 14:30.1 and in the case of Attempt 2nd Degree Murder. In the state's attempt to prove the element of specific intent, Prosecutor Braswell illegally introduced an inculpatory res gesta statement allegedly made by petitioner on the scene of the crime. Prosecutor Braswell elicit the statements from state's sole witness Angela Jarvis as followed,

Q. "And after Ashley was shot, did you ever hear the driver of the vehicle say anything?"

A. "He asked the guy that was doing the shooting did he get them?"

Q. "Okay. Did he say anything else?"

A. "He ordered him to make sure that me and Ashley both was dead." (Rp. 73/257 - 74/258).

These statements were never disclosed to petitioner in the state's discovery answer as required by La. C. Cr. P. art. 716(B), (See Exhibits A and B, Jarvis never told Dets. of this so it wasn't in the reports), and the state also failed to give a written notice of intent to use such statements as required by La. C. Cr. P. art. 768, therefore rendering the statements inadmissible (see Grounds #7 (B) in this Memo. p.13-14).

Petitioner contends that counts one and two was a one witness case and the inadmissible statements were the only evidence used to prove the element of specific intent. At closing statement the state even stated to the jury, "Did Preston Nelson have the specific intent to kill Angela Jarvis and the specific intent to kill Ashley London? Yes. The reason we know that is because of his actions and what he said. Angela told you that she heard Preston Nelson say, Did you get'em? Did you get'em both? -- These are words from his mouth. He meant to kill Angela Jarvis and Ashley London." (Rp. 46/469). This was also illegal, but more so established the state's purpose for illegally introducing these inadmissible res gesta statements. When excluding the illegal statements, the remaining evidence in the state's case shows a short come, where the state failed to over come it's burden of proving specific intent, which renders the evidence insufficient and incapable of sustaining the the conviction of counts one and two. U.S. Const. 14th amend. Due Process.

## Relief

Conviction and sentence be reversed, set aside, and acquittal granted.

## Grounds #3

State issue (Abandoned).

6.

## Ground #4

Petitioner's U.S. Const. 6th amend. right was violated where trial court compelled petitioner to continue in a trial with counsel whom petitioner became embroiled in an irreconcilable conflict, which denied petitioner's right to choice of counsel.

## Facts

At trial petitioner moved with motion to withdraw his retained counsel Mr. Hays Town and requested for a court appointed counsel due to a communication break down during trial (R.p. 358). The trial court stated, "If I have somehow made an error in not permitting you to go forward the way you want, the appellate court can correct me." Thereafter, defense counsel moved for a defense mistrial and stated that he join and agrees with defendant's motion to dismiss him as counsel. The trial court replied, "I deny both motions on his behalf and your behalf. We are going to complete the trial. I'm going to allow you to take a short recess and collect yourselves, and then we will resume the testimony in about five minutes." (R.p. 359).

During that recess petitioner became embroiled with his retained trial counsel, and made threat of physically harming his counsel for not asking questions that petitioner wanted him to ask the witnesses during trial. The trial court was advised by two deputies of the incident. The trial court informed counsel of his client's threat, then called petitioner into court room to address the the threat made by petitioner (R.p. 359-361). After the court questioned petitioner pertaining to the threat made, the record clearly show that the trial court became fully aware of the strong possibility of a physical altercation that may occur between defendant and his retained counsel when the court stated, "I feel concern right now, that you are going to harm him." (R.p.363).

The situation led the trial court to separate petitioner from his counsel at the defense table and placed a deputy between them for the remaining portions of the trial (R.p.363), compelling petitioner to continue in a trial of grievous crimes with counsel whom petitioner became embroiled in an irreconcilable conflict. The trial court's denial of petitioner right to choice of counsel also compelled petitioner to forego testifying in his own behalf. (see Grounds #5 p.8-9 inside this meom.). Wilson v. Mintzes, 761 F.2d 275, (C.A.6 (Mich.) 1985)(The two-prong performance prejudice

*Strickland* test for determining effectiveness of counsel is not applicable to cases involving choice of counsel.) (Accused who has been improperly deprived of counsel of his choice need not show prejudice resulting from trial court's denial thereof in order to be entitled to relief.) See petitioner "Motion for Leave to assert proper review of Claim #4" that petitioner filed to La. First Circuit Court of Appeal in addition to Supervisory Writ Claim #4 p.8-9.

## Relief

Petitioner's Conviction and Sentence be reversed and set aside.

## Ground #5

Trial court constructively denied petitioner his Right to testify on his own behalf. Art. 1§16 of La. Const. and 5th, 6th, and 14th amends. of the U.S. Const. .

## Facts

Due to all the facts established in Ground #4 (see Ground #4 of this Memo. p.6-7), petitioner was left with a distrust for his counsel. Petitioner asked the trial court, "-- There's one last thing I want to ask for my understanding of this here. Well right now is a conflict between me and my lawyer. How is it legal -- you know what I'm saying -- under the law, that we proceed on with this here? Let me -- stop right here -- just let somebody else in for him." (R.p. 364). The trial court replied, "The Appellate Court is going to have to resolve whether or not I have made an error." (R.p. 364).

Trial court's failure to cure the situation between petitioner and his counsel left petitioner with a paranoia and strong distrust for his counsel, which caused petitioner not to testify when actually desiring to testify as a defense. At trial petitioner stated, " I really do want to testify in my own behalf but on the way my lawyer has presented his self and the irrational way about asking the proper questions on my behalf. -- I feel he won't ask the proper questions on my defense. --- So I don't want to say something that the state can probably use." (R.p.465). The trial court showed it's understanding by stating, "Very well. Then I will take it, from your statement that in addition to the complaint (see Ground #4 of this memo. p.6-7.) you've decided not to testify." (R.p.465). The trial court constructively denied petitioner of his right to testify by failing to cure the matter between petitioner and counsel.

The record clearly reflect that petitioner expressed his desire to testify on his own behalf but feared his lawyer was going to ask incriminating questions that would have worked in the states favor. A defendant's right to testify on his own behalf is a necessary corollary of his sixth amend. U.S. Const. right to compulsary process because the most important witness for the defense in many cases is the defendant himself. Whenever a defendant is prevented from testifing, after unequivocally expressing his desire to do so, the defendant has been denied a fundamental right and suffers detrimental prejudice. Also, denial of a criminal defendant's right to testify, simply cannot be amenable to harmless error. State v. Hampton, 818 So. 2d 720, 2000-0522 La. 3/22/02, (La 2002), and cases cited therein.

## Relief

Petitioner's conviction and sentence be reversed and set aside.

## Ground #6

Trial counsel denied petitioner of his right to effective assistance of counsel, 6th amend. U.S. Const., and Art. 1 section 2, 13, and 16 of La. State Const.

t.) Trial counsel failed to object to prosecutor's improper statement during opening statement.

## Facts

Prosecutor Braswell, during the state's opening statement, commented upon alleged confession of petitioner by stating to the jurors, "Robin will tell you that these two men have told her that they are in fact, the ones that committed the homicide of Jessica Parker and Kevin Bowie". (R.p.197). Prosecutor Braswell was in violation of La. C.Cr.P. Art. 767 (See Grounds #7 of this Memo.), trial counsel failed to object.

Article 841 of the Louisiana Code of Criminal Procedures states, "An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." However, nowhere in the record does it reflect counsel ever objecting to prosecutor's improper statement in opening statement. Counsel's objection was necessary for petitioner to reserve his right to attack the issue on later review of the Appellate court.

Trial counsel's failure to object also left the court unaware of the need to instruct the jury adequately and with sufficient force to eliminate the serious prejudice to the defendant. Petitioner's position had so deteriorated

that his chances for a fair deliberation of his fate by the jury were virtually eliminated.

Due to the above stated facts, petitioner's counsel's performance was deficient and also highly prejudice towards petitioner's verdict.

<u>Relief</u>

Petitioner's conviction and sentence shall be reversed and set aside.

3.) Trial counsel failed to subject the prosecutor's case to a meaningful adversarial testing during the critical stage of cross-examination of state witness Angela Jarvis.

<u>Facts</u>

The crux of the Elm Grove murder case of Ashley London and attempt murder of Angela Jarvis (R.p. 22 counts one and two) rested on the relibility of a sole identification made by the prosecutor's only witness, Angela Jarvis.

At trial, lead detective of the case, Christopher Rudy testified that Angela Jarvis did not know who was involved and couldn't identify anyone for two months (R.p. 249). Also, according to Det. Rudy's written reports, on June 29, 2011 Ms. Jarvis told Police Officers that she was unsure of who was responsible for the incident. That info was learned during an interview of Ms. Jarvis which took place on the scene of the crime and at the V.C.U. H.Q. (see Exhibit A). The next day on June 30, 2011 at approx. 0052 hrs., Ms. Jarvis was interviewed again by Det. Rudy and and was unable to give a description of the driver and had no idea of who was involved (see Exhibits B). Eleven days later on July 11, 2011, Ms. Jarvis voluntarily went back to the V.C.U. H.Q. for another interview but was unable to provide any new information (see Exhibit B last paragraph). After two months of Ms. Jarvis not knowing who was involved, she mysteriously indentified petitioner as the driver involved in the incident (R.p. 249).

At trial, Ms. Jarvis testified that she was in her vehicle at a stop sign on the corner where Brady st. and Fairchild st. meet when an on coming white truck slowly passed her by looking at her vehicle (R.p. 255). Ms. Jarvis testified that she got a positive good look at the driver while at the stop sign of Brady st. and Fairchild st. (R.p. 256), which was physically impossible and totally opposite of what Ms. Jarvis told Det. Rudy on 6-29-11, 6-30-11, and 7-11-11 (see Exhibits A, B, and C).

Petitioner contends that counsel failed to contest Ms. Jarvis's opportunity to see petitioner in a location that doesn't exist. The case

10.

was solely based on Ms. Jarvis's identification where she testified to only one brief opportunity to see the driver on a pass by, at a stop sign on the corner of Brady st. and Fairchild st. (R.p. 70/254 - 84/268). Trial counsel failed to contest this matter where there were available maps of the areas that would have shown to the jury that her only opportunity to see the driver was impossible, where Brady st. and Fairchild st. are 4.7 miles apart from each other and doesn't meet or cross at any point (see Exhibits C, D, E, and F, also the Facts In Grounds #2 of this memo.). Ms. Jarvis testified to seeing the driver (Petitioner) at a stop sign on the corner of Brady st. and Fairchild st., not during the actual act of the crime on the crime scene of Elm Grove Apts.. But counsel totally neglected this sole point which led to petitioner's conviction, and based all questions on Ms. Jarvis's opportunity to see the shooter on the crime scene of Elm Grove Apts., when in fact, petitioner was accused of being the driver who was only allegedly seen in a totally different location from the crime scene (see entire examination of Angela Jarvis R.p. 70/254 - 84/268).

On grounds of the above, petitioner contends that he was denied effective assistance of counsel, where counsel failed to put forward a meaningful adversarial testing during the critical stage of cross-examination of the state's sole witness, Angela Jarvis. U.S. Const. 6th Amend.. U.S. v. Cronic, 104 S.Ct. 2039, 466 U.S. 648 (U.S. Okla. 1984).

## Relief

Conviction and sentence be reversed and set aside.

C.) Trial counsel Haystown failed to object where prosecutor violated discovery articles 716 (B) and 768 of La. C.Cr.P. by introducing at trial an inculpatory res gesta statement allegedly made by petitioner during the act of the crime, which was never disclosed or any notice of intent to use was ever given to the defense.

## Facts

At trial for the charges of counts one and two (R.p. 22), the prosecutor attempted to prove the element of specific intent by introducing an inadmissible res gesta statement allegedly made by petitioner during the act of the crime (see Grounds #7(B) of this memo. p.13-14). Prosecutor Braswell was in violation of La. C.Cr.P. art. 716 (B) and 768 by introducing the inadmissible statements that were never disclosed prior to trial or any notice of intent to use was ever given to the defense. Trial counsel failed to object at the time of occurrence.

11.

Article 841 of La. C. Cr. P. provides, "An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.". However, nowhere in the record does it reflect counsel ever objecting to the error. Counsel's objection was necessary for petitioner to preserve his right to attack the issue on appeal. The prosecutor's violation of art. 716(B) and 768 was substantial and very much contributed to the verdict which would have led any reasonably competent trial counsel to object to the error at trial (see Grounds #7(B) of this memo. p.13-14).

Petitioner asserts that trial counsel's failure to object to the state's violation of La. C. Cr. P. art. 716(B) and 768 has rendered his performance deficient, and highly prejudice, where the inadmissible res gesta statements was the only piece of evidence introduced to prove specific intent. Without the inadmissible res gesta statement being introduced, there was a lack of specific intent, which eliminates the charges of Second Degree Murder and Attempt in counts one and two (see Grounds #2(B) of this memo. p. 5-6 ).

## Relief

Conviction and Sentence be reverse and set aside, on counts one and two.

## Grounds #7

Petitioner's La. Const. right Article 1. §2, and 14th amend. right to the U.S. Const. were violated where Prosecutor commented upon alleged confession of petitioner in her opening statement.

## Facts

Prosecutor Braswell commented upon alleged confession of petitioner in her opening statement by stating to the jurors, "Robin will tell you that these two men have told her that they are in fact, the ones that committed the homicide of Jessica Parker and Kevin Bowie." (Rp.197). The Prosecutor was in violation of La. C. Cr. P. Art. 767 which provides: "The state shall not in opening statement, advert in any way to a confession or inculpatory statement made by the defendant unless the statement has been previously ruled admissible in the case." The alleged inculpatory statement was never ruled admissible in petitioner's case or ever brought forward for consideration on that matter.

Prosecutor was in violation of La. C. Cr. P. Art. 768 as well, where Prosecutor fail to advise defendant in writing prior the begining of the state's opening statement.

When reviewing the entire examination of state witness Robin Johnson, Ms. Johnson never stated that petitioner told her anything pertaining to the homicide of Jessica Parker and Kevin Bowsie (R.p. 430-445), therefore showing inconsistency on behalf of the Prosecutor's opening statement and what was presented at trial. The prosecutor's statement, "Robin will tell you that these two men have told her that they are in fact the ones that committed the homicide of Jessica Parker and Kevin Bowsie." (Rp.197), was prejudice and cause the trial to be fundamentally unfair where the prosecutor's statement permitted and suggested to the jury that petitioner had confessed guilt outside of the court room. Hall v. U.S., 419 F.2d 582, 583--584 (5th Cir).

Petitioner asserts that Robin Johnson stated at trial that petitioner never told her anything (R.p. 9/432).

<u>Relief</u>

Conviction and Sentence be reverse and set aside on counts three and four (R.p. 24).

B.) Petitioner's 14th amend. of the U.S. Const. right was violated where Prosecutor Braswell violated La. C.Cr.P. art. 716 (B) and art. 768 by introducing at trial an inculpatory res gesta statement allegedly made by petitioner during the act of the crime, which was never disclosed prior to trial or any written notice of intent to use as evidence was ever given to the defense.

<u>Facts</u>

In the case of counts one and two (R.p. 22) there was no evidence to prove that petitioner had specific intent to cause death or great bodily harm to Angela Jarvis or Ashley London, besides an inculpatory res gesta statement allegedly made by petitioner during the act of the crime, which prosecutor Braswell illegally introduced at trial by failure to put the defense on notice of the state's intent to use as evidence and failure to disclose that the statement was ever alleged to have been made, La. C.Cr.P. art. 716 (B) and 768.

At trial the prosecutor elicit the statement from state witness, Angela Jarvis as followed, Q. "And after Ashley was shot, Did you ever hear the driver of the vehicle say anything?". A. "He ask the guy that was doing the shooting did he get them." Q. "Okay. Did he say anything else?" A. "He ordered him to make sure that me and Ashley both was dead." R.p. 73/257 - 74/258). Also, during the state's closing statement, the sole purpose for the res gesta statement was indirectly clearified when the prosecutor

Stated to the jury, "Did Preston Nelson have the specific intent to kill Angela Jarvis and the specific intent to kill Ashley London? Yes. The reason we know that is because of his actions and what he said. Angela told you that she heard Preston Nelson say, Did you get'em? Did you get'em both? -- These are words from his mouth. He meant to kill Angela Jarvis and Ashley London". (R.p. 468/469).

Prosecutor's introduction of this alleged inculpatory res gesta statement was violative of La. C. Cr. P. art. 716(B) and art. 768 where the state had an affirmative duty to provide reasonably particularized notice of t's intent to use this alleged res gesta statement, but fail to do so. Prosecutor also fail to disclose that petitioner had allegedly made the res gesta tatement. Since the defense did not know of the alleged res gesta tatement and to whom, when and where it had been made as required by LSA-C.Cr.P. art. 716(B), petitioner had no clue of the strength of he state's case. Petitioner's counsel not only could not investigate hether this particular statement had in fact been made, but ounsel could not tailor his voir dire, opening statement or trial xamination of the state's sole witness in this case (Angela Jarvis).

Without the res gesta statement being placed before the jury, the tate would not have filled it's burden of proving specific intent in this ase, which shows that the prosecutor's violation of illegally ntroducing the alleged statement very much contributed to the erdict. Petitioner also points this court's attention to the fact that As. Jarvis never told Detectives that she heard any such res gesta statement (see Lead Det. Rudy written reports of his interview with As. Jarvis, Exhibits A and B). Petitioner's discovery did not disclose ny such statement.

<u>Relief</u>

Conviction and Sentence be reversed and set aside on counts one and two. (R.p. 22).

<u>Grounds #8</u>

Petitioner's U.S. Const. 14th amend. right was violated where Prosecutor knowingly allowed state witness perjured testimony to go uncorrected.

<u>Facts</u>

Prior to trial, during Police investigation, according to Det. Christopher Rudy interview report of Angela Jarvis on 6-30-11, Jarvis was unable to give a description of the Suspects and stated that she had no idea of who may have been involved in the incident (see Exhibit B). On 7-11-11, Jarvis was still unable to provide any new information (see Exhibit B last paragraph). Also on 6-29-11, the night of the

Elm Grove incident, Jarvis did not know who was involved. (Exhibit A). It is clear from these reports that Ms. Jarvis told Det. Rudy that she had no idea who could have been involved, she could not give a description of the suspects, and she did not at the least, tell of an opportunity where she was able to see the driver which would have supported any later identification. Det. Rudy also testified at trial that Ms. Jarvis did not know who was involved for two months (R.p. 65/249).

At trial when Ms. Jarvis was asked: "Ms. Jarvis 29 June of last year, you told detective Rudy that you could not identify anybody, correct?". Ms. Jarvis committed perjury by replying, "No, that is not correct. Actually, I told them if I see them again, I would know thier face." (R.p. 79/263). Contrary to Ms. Jarvis's statement, Det. Rudy was asked: "And she did not identify any known subject for this incident?", Det. Rudy replied: "She was -- No. She didn't know who was involved." (R.p. 65/249). In support of Det. Rudy's testimony, Det. Rudy's interview report of Ms. Jarvis confirms that Ms. Jarvis actually told Det. Rudy that she had no idea who may have been involved and she could not give a description of the driver (Exhibit B).

State witness Angela Jarvis also committed perjury where she testified to seeing the driver (Petitioner) face to face as the driver drove pass her in the on coming lane at a stop sign where Brady st. and Fairchild st. meet (R.p. 71/255-72/256). This is contrary to what Ms. Jarvis actually told Det. Rudy. Jarvis told Det. Rudy that she could not give a description and that she had no idea who could have been involved (Exhibit B). In addition, the location of a stop sign on the corner where Brady st. and Fairchild st. meet, where Jarvis testified to seeing petitioner face to face on a pass by (R.p. 71/255-72/256) is also false. The location point where Brady st. and Fairchild st.

15.

meet do not exist. These are two streets that are located in two totally different areas of the city of Baton Rouge and do not meet or cross anywhere at any point (Exhibits C, D, E, and F). Ms. Jarvis lied to create an only opportunity to see the driver (petitioner) (see entire examination of Jarvis R.p. 70/254 - 84/268), which is opposite of what Jarvis told Det. Rudy (Exhibit B).

Prosecutor Braswell was fully aware of Ms. Jarvis's prior statements where the state was in possession of Police Reports and Interviews Reports but, when Jarvis's perjured statements occurred at trial, Prosecutor Braswell abandoned her duty by not correcting what was known to be false. Naupe v. Illinois, 79 S. Ct. 1173, 360 U.S. 264.

Petitioner asserts that the effect these false statements had on the judgement of the jury was highly prejudice where Jarvis's perjured testimony was the only convicting evidence, without Jarvis's perjured testimony there would have been no conviction of counts one and two of the indictment. It was a one witness case. The U.S. Supreme Court held, "Principle that a state may not knowingly use false evidence, including false testimony to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness. U.S. Const. Amend 14." Naupe v. Illinois, 79 S. Ct. 1173, 360 U.S. 264.

<u>Relief</u>

Therefore petitioner's conviction and sentence of counts one and two of the indictment (R.p. 22) shall be reversed, null, and set aside.

Ground   #9
Noted as **Plain** Error

Art. 465 of La. C. Cr. P. as amended by Acts 1973, No. 128, § 1, and authorized by Art. 235 of the 1928 La. C. Cr. P. and by Sec. 188 of the A.L.I. C. Cr. P., is unconstitutional and incapable of satisfying the constitutional guarantee of La. State Const. Article 1 § 2, 13, 15 and U.S. Const. 6th and 14th amend. which petitioner has been deprived of.

## Facts / Law and Argument

Petitioner was convicted and sentenced on a bill of indictment charging 3 counts of Second Degree Murder, Attempted Second Degree Murder, and Felon in Poss. of Firearm, which was filed in mode of Short Form under La. C. Cr. P. Art. 465 (7) and (32), where the state left the indictment absent of the essential elements / nature and cause of the accusations against petitioner (see indictment R.p. 22 and 24). Petitioner was one of two accused co-defendants who were separately indicted and convicted of the above charges, but petitioner's indictment failed to inform him of what role he was being held accountable for playing part thereof. Also, the omission of one of the four essential elements that constitute the actual crime of Second Degree Murder in the state of Louisiana (La. C. Cr. P. R.S. 14:30.1,(1),(2), (3) or (4)) left petitioner scantily informed, having to depend on the hypothesis that he was charged with one or the other essential elements that constitute Second Degree Murder (Petitioner filed motion for bill of particulars but never received an answer, see Exhibit-I ). La. C. Cr. P. art. 465, which permit these highly technical omissions is unconstitutional where it deprives the accused of his guaranteed constitutional right that he shall not be called to answer for any criminal offense except on indictment or information, and for capital crime or crime punishable by life imprisonment except on indictment by grand jury, also, the

17.

right that 'in all criminal prosecutions, the accused shall be informed of the nature and cause of the accusation against him, La. State Const. Art. 1 § 13 and 15 and U.S. Const. 6th amend..

On grounds of the above and following assertions within his claim, petitioner squarely contends that La. C. Cr. P. art. 465 is amended by Acts 1978, No. 128, 81 is unconstitutional even though a bill of particulars can be furnished since our constitutional requirements are not satisfied by the inclusion of the nature and cause of the accusation in such a bill of particulars.  The long line of authorities in this state and the overwhelming majority of opinions throughout the country has held that a bill of particulars forms no part of an indictment or information and can in no way aid or render sufficient one that is fundamentally bad, State v. Bienvenu, 207 La. 859, 22 So. 2d 106; State v. Long, 129 La. 777, 56 So. 884; State v. Goodson, 116 La. 388, 40 So. 771; State v. Dabbs, 228 La. 960, 84 So. 2d 601;  Indictments and Informations, § 156, p. 1101; U.S. v. Kessler, D.C., 43 F. Supp. 408; U.S. v. Johnson, D.C., 53 F. Supp. 167; State v. Daly, 3 N.J. Super. 247, 66 A.2d 354; and the list goes on, see (F.N. 8) of landmark case State v. Straughan, 87 So. 2d 523, 229 La. 1036 (La. 1956).

Such a procedure under La. C. Cr. P. art. 465 is not only an innovation that has brought danger and harm to the right of petitioner's life and liberty, which he can only be deprived except by due process of law (La. State Const. Article 1 § 2 and 14th amend. of U.S. Const.), but also that our constitution, as written and adopted, permits no such experimentation with the law as legislature has done here, for though the legislature may change the form of an indictment and information, it cannot change the substance of their material averments without infringing upon constitutional guarantees. These constitutional provisions are not meaningless tautology. Instead, they form one of the principal cornerstones of our Bill of rights. Furthermore, the indictment and information are

universally recognized to be the very groundwork upon which the whole superstructure of a prosecution for the commission of an offense is predicated. They have in the common law of England, always meant that an accused can be prosecuted only by an indictment or information, in which document he is to be informed of the nature and cause of the accusation against him.

The requirement that the prosecution 'shall be by indictment or information' has been included in all constitutions that have formed the organic law of this state, beginning with the first one drafted and adopted in 1812 under Congressional authorization. In the constitution of 1812, the right of the accused to 'demand' the nature and cause of the accusation against him was recognized, and although this provision, immediately following Louisiana's secession from the Union, was omitted, it reappeared in the constitution of 1879, and has since that time guaranteed that in all prosecutions the accused 'shall be informed of the nature and cause of the accusation against him'. (La. State Const. Article 1 §13 of 1974). For this, the bill of particulars, regardless of the constitutional provisions, is being used as a vehicle to charge the nature and cause of the accusation, not the indictment or information under La. C. Cr. P. art. 465. In State v. Liner, La. 373 So. 2d 121, the defendant was charged by Short Form indictment as follows: "David Jon Liner committed first degree Murder of Roxanna Barrilleaux, contrary to the provisions of R.S. 14:30 . . .". The court stated in part [3];

. . . Defendant was charged in compliance with C. Cr. P. Article 465, . . . . Defendant was, of course, entitled to notice of the aggravating circumstance upon which the state would rely to establish the the offense. See, La. Const. 1974, Art. 1 §13. However, the recital of the details of the offense is more properly reserved to a bill of particulars. See, State v. Abney, Supra, 347 So. 2d 498 (1976)".

The bill of particulars is being used in attempts to justify that the special short forms are not violative of the constitutional requirement, that the accused be informed of the nature and cause of the accusation because he is amply protected by the provision of La. C. Cr. P. Art. 484, former R.S. 15:235, that the district attorney may be ordered to furnish him with a bill of particular setting forth more specifically the

nature and cause of the offense charged. See State v. Ward, 208 La. 56, 22 So. 2d 740; State v. Nichols, 216 La. 622, 44 So. 2d 318.

Petitioner asserts that the bill of particulars cannot afford protection to petitioner's La. Const. Art. 1 §13 and U.S. Const. 6th amend. right, where the short form art. 465 fail to do so. The La. Supreme Court made it clear: "... It is declared that the provision contained in R.S. 15: 235 now Art. 465 and Art. 484) that the prosecution may be required by the judge on request of the accused to furnish a bill of particulars setting forth the nature of the offense charged -- is inadequate to afford protection to the constitutional rights of the accused for the reason that our constitutional provision, unlike that in many other states, guarantees a compliance by the State and it is not essential that the accused make demand therefor. And it is also deduced that a bill of particulars cannot fulfill the constitutional guarantee since it does not have the effect of amending a bill of indictment or information." State v. Straughan, 87 So. 2d 523, 229 La. 1036, (La. 1956). The United States Const. 6th amend. also guarantees a compliance by the state that "The accused *shall be informed of the* nature and cause of the offense", which is not essential that the accused make demand therefor.

Such a procedure is not only not authorized under our basic law, it is also contrary to all concepts of the criminal charge by indictment or information, La. State Const. Art. 1 §15. The oversimplified procedure of La. C. Cr. P. Art. 465 has substituted the criminal charge under the common law 'notice', making the indictment and information a mere process pleading without the inclusion of a single fact upon which the charge was based, which left petitioner in total darkness as to the acts of omission or commission **constituting** the basis of the accusation, as well as what role petitioner played out of the two accused, making it impossible for petitioner to prepare for his defense unless he filed motion for bill of particulars under art. 484, which is not mandatory to be furnished. State v. Warren, 700 So. 2d 1297, 29, 630 La. App. 2 Cir. 9/24/97). (Petitioner filed motion for bill of particulars to be clearly informed, But recieved no answer. See, Exhibit I).

The nature and cause of the accusation requirement, as found in the constitution, must be determined in the sense in which it was used in the common law at the time of its adoption, Contemporanea Expositio. These mandates may not be subverted or overthrown by

direct or indirect legislative action, or written out of contents of the constitution by judicial pronouncement on the assumption they have been superseded as antiquated and obsolete. Neither the judiciary nor the legislature is authorized to extend or contract the meaning of these constitutional provisions beyond that of the common law, and where it is provided by the constitution that a person shall not be called to answer for any criminal offense except on indictment or information (La. Const. Art. 1 §15), and particularly where the constitution provides that 'In all criminal prosecutions, the accuse *shall be informed* of the nature and cause of the accusation against him' (La. Const. Art. 1 §13 and U.S. Const. 6th amend.), such provisions place it beyond the power of the legislature to despense with the statement in this document, as universally understood, that all of the essential facts necessary to describe the nature and cause of the offense must be incorporated in the initial criminal charge, which must be by indictment or information. State v. Straughan, 87 So. 2d 523, 229 La. 1036 (La. 1956).

Also, in U.S. v. Potter, C.C., 56 F. 83, 89, it is very aptly pointed out that "In order to properly inform the accused of the nature and cause of the accusation, within the meaning of the Constitution and the rule of the common law, a little thought will make it plain, not only to the legal, but to all other educated minds, that not only must all the elements of the offense be stated in the indictment, but that also they must be stated with clearness and certainty, and with sufficient degree of particularity to identify the transaction to which the indictment relates...".

In contrary, the La. C. Cr. P. Official Revision Comment of Art. 465 provides, (a) "The short form indictment, authorized by Art. 235 of 1928 La. C. Cr. P. and by Sec. 188 of the A.L.I. C. Cr. P., provides effective relief from the technicalities of the old common law rules... The basic function of the specific indictment forms is to inform the accused of the crime charged, reserving a recital of the details of the offense for the bill of particulars, which is not subject to the same rules of strict construction as the indictment... This precludes use of the indictment as a vehicle for a battle of wits between the draftsman and a defense counsel who seeks to checkmate the state by some inadvertent and often highly technical

omission. ..." . Petitioner asserts that these same highly technical omissions can simply be prevented if the state was to respect and comply to the accused constitutional rights, but instead, the legislature has strayed away for the common law and enabled the state to freely make the indictment a mere pleading without the inclusion of a single fact upon which the charge was based, allowing the highly technical omissions to stand at no consequent to the state. This has left the accused naked and defenseless against this evil that is being justified with La. C.Cr.P. Art. 465 as amended by Act. 1973, No. 128, §1, which the state exercises while trampling on the accused constitutional rights. In State v. Liner, La., 373 So. 2d 123, the dissenting Justice, Calogero stated in part, " ... I find that insofar as La. C.Cr.P. art. 465 authorizes a fundamentally incomplete short form indictment, it conflicts with the constitutional provision and cannot be relied upon as a bootstrap to uphold an abridgement of a constitutional guarantee. ..."

The constitutional guarantee of due process of law does not mean a procedure that endangers the innocent, but a procedure that preserves those enduring principles enunciated in our Bill of Rights, and preserves those basic rights termed as inalienable in our Declaration of Independence. This procedure can alone insure the security of the innocent, and guilty until he **has** been adjudged. Therefore, the court cannot, under the guarantees, permit defects in the initial criminal charge to be overlooked if the record as a whole shows the substantial, as if the rights of the accused have not been prejudiced. Nor can the court, under constitutional mandate, sanction legislative action of La. C.Cr.P. Art. 465, which transcends these fundamental constitutional provisions and permits prosecution by bill of particulars, rather than by an indictment or information.

## Relief

Accordingly, La.C.Cr.P. Art. 465 as amended by Acts 1973, No. 128 §1 shall be declared null, void, and of no effect; Consequently rendering petitioner's indictment fatally defected, reversing conviction and sentence; and order petitioner's discharge from custody.

## Grounds #10

Petitioner's U.S. Const. 6th and 14th amend. rights to due process of a fundamentally fair trial were violated due to the cumulative effect of all properly established U.S. Const. violations in this case combined.

## Facts/Law

Petitioner asserts that his properly raised U.S. Const. violations placed before this court that might not be so prejudicial as to amount to a deprivation of due process when conducting a balkanized issue-by-issue harmless error review, has cumulatively produced a trial setting that was fundamentally unfair, depriving petitioner of his U.S. Const. 6th and 14th amend. right to due process of a fundamentally fair trial. Matlock v. Rose, 731 F.2d 1236, 1244 (6th Cir. 1984)

## Relief

Conviction and sentence be reversed and set aside

✳    ✳    ✳    ✳    ✳    ✳    ✳

Petitioner presents the following in addition to further establish the above Grounds #1 - #10.

In addition to:

## Grounds #1

In addition to Grounds #1 (see p. 2-3 of this Memo.) petitioner further contends that the Louisiana Supreme Court held that petitioner fail to show that he received ineffective assistance of counsel under the standard of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984).

Petitioner contends that the La. Supreme Court ruling is erroneous. Petitioner is only required to show that his attorney's performance was deficient and second, demonstrate that such deficiency caused him prejudice. Petitioner contends that the combination of Grounds #1 (A) with Grounds #2 (see p. 2-3 and p. 3-6 of this Memo.) clearly meet the requirement, which proves the La. Supreme Court denial in this case to be contrary to the U.S. Const. 6th amend. (see Grounds #1 and #2). Therefore, relief should be granted.

Petitioner further contends that the same apply to Grounds #1 (C). Where the combination of Grounds #1 (C) with Grounds #4 (see p. 2 and

p. 7-8 of this memo, clearly violated petitioner's 6th amend. right to choice of counsel in Washington, leaving the La. Supreme Court ruling to stand erroneously. (see Grounds #1(c) and Grounds #4). Relief should be granted.

## Grounds #2

In addition to Grounds #2 (see Grounds #2 p. 3-6), petitioner further contends that the La. Supreme Court held that petitioner fail to satisfy his post-conviction burden of proof, La. C. Cr. P. art. 930.2. (see Ruling).

La. C. Cr. P. art. 930.2 provides: "The petitioner in an application for post conviction relief shall have the burden of proving that relief should be granted."

Petitioner contends that the facts and law that were asserted clearly proves that petitioner should be granted relief, (see Grounds #2 p. 3-6 of his memo.). In re Winship, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970), the court holds that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." See also Jackson v. Virginia, 99 S. Ct. 2781, 443 U.S. 307, (U.S. Va. 1979). Petitioner contends that the facts and law asserted in Grounds #2 clearly establishes a "Due Process Violation where the Elm Grove murder was not proven beyond a reasonable doubt of every fact necessary to constitute the crime (see Grounds #2 of this memo p. 3-6). Therefore, on grounds of Grounds #2, relief should be granted where the La. Supreme Court ruling is clearly erroneous against the facts and law established therein. The evidence in the Elm Grove murder case is insufficient. U.S. Const. 14th amend.

## Grounds #3
State issue (Abanded).

## Grounds #4

In addition to Grounds #4 (see Grounds #4 p. 7-8), petitioner further contends that the La. Supreme Court, held that petitioner fail to satisfy his burden of proof in Post conviction, La. C. Cr. P. art. 930.2. (see lower Court's ruling).

Petitioner contends that the La. Supreme Court ruling is erroneous against the facts and law that petitioner asserted to establish his claimed 6th amend. U.S. const. right to choice of counsel (see Grounds #4 p. 7-8 of this memo). Petitioner clearly proved a violation of his right to choice of counsel in which prejudice is not required to be shown. The U.S. Supreme Court stated: "Where the right to be assisted by counsel of one's choice is wrongly denied, it is unnecessary to conduct an ineffective or prejudice inquiry to establish a Sixth Amendment violation. Deprivation of the right is 'complete' when the defendant is

24.

erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received. To argue otherwise is to confuse the right to counsel of choice--". U.S. v. Gonzalez-Lopez, 126 S.Ct. at 2563.

Petitioner contends that the La. Supreme Court denial is totally contrary to the well established law of the U.S. Supreme Court and Constitution. Therefore, relief should be granted where petitioner has established his U.S. Const. 6th amend. violation (see Grounds #4 p. 7-8 of the memo.).

## Ground #5

In addition to Ground #5 (see Grounds #5 p. 8-9 of this memo). Petitioner further contends that the La. Supreme Court held that petitioner fail to satisfy his post conviction burden of proof, La. C.Cr.P. art. 930.2. (see Ruling).

Petitioner contends that the La. Supreme Court ruling is erroneous and contrary to the U.S. Const. and U.S. Supreme Court rulings. As Rock observed, defendant's right to testify on his own behalf is a necessary corollary of his Sixth Amendment right to compulsory process because "the most important witness for the defense in many criminal cases is the defendant himself." Rock v. Arkansas, 483 U.S. at 52, 107 S.Ct. 2704. Rock also spoke of the right to testify as among those rights that " 'are essential to due process of law in a fair adversary process.' " Id. at 51, 107 S.Ct. 2704 quoting Faretta v. California, 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 45 L.Ed.-2d 562 (1975)(emphasis added) ). The La. Supreme Court in State v. Hampton, stated in reference to these U.S. Supreme Court holdings, "-- such language unmistakably places the defendant's right to testify among those protections without which a criminal trial is "structurally flawed." ".

In connection with Grounds #4 of this memo p. 7-8, petitioner contends that the facts and law asserted in Grounds #5 of this memo p. 8-9 clearly shows a violation of petitioner's U.S. Const. rights, which requires relief to be granted, where petitioner was compelled to forego his right to testify due to the facts and law asserted in Grounds #4 of this memo, p. 7-8. Due to the combination of Grounds #4 and #5 of this memo, petitioner should be granted relief where the facts and law therein proves the La. Supreme Court ruling to be contrary to the U.S. Const. amend. 5th, 6th, and 14th.

## Ground #6

In addition to Grounds #6 (see Grounds #6 p. 9-12 of this memo), petitioner further contends that the La. Supreme Court held that petitioner fail to satisfy his post conviction burden of proof, La. C.Cr.P. art. 930.2. (see denial, Ruling.).

Petitioner contends that the La. Supreme Court ruling is erroneous and contrary to the U.S. Const. 6th amend. where the cumulative effect

of (A), (B), and (C) under Grounds #6 of this memo. p. 9-12 proves a 6th amend. violation of the U.S. const., in which petitioner is entitled to relief.

<u>Grounds #7</u>

In addiction to Grounds #7 p. 12-14 of this memo. Petitioner further contends that the La. Supreme Court held that petitioner fail to satisfy his post conviction burden of proof, La. C. Cr. P. art. 930.2. (See Ruling).

Petitioner contends that the La. Supreme Court ruling is erroneous and contrary to the U.S. Const. 14th amend. where the cumulative effect of the prosecutor's misconduct deprived petitioner of his due process of a fundamentally fair trial. (see Grounds #7 p. 12-14 of this memo.). Petitioner should be granted relief due to the facts and law assert therein. Ground #7 p. 12-14 of this memo.

<u>Grounds # 8</u>

In addiction to Grounds #8 p. 14-16 of this memo., petitioner further contends that the La. Supreme Court denial (see court's Ruling) is erroneous against the facts and law of Grounds #8. Where petitioner's U.S. Const. 4th amend. right was shown as being violated, the court was required by law of the U.S. to grant relief, where the state is not allowed to knowingly use false evidence, including false testimony to obtain a tainted conviction --" Naupe v. Illinois, '79 S.Ct. 1173, 360 U.S. 264, and this does not cease to apply merely because the false testimony goes only to the credibility of the witness. see Grounds #8 p. 14-16 of this memo. for detailed facts, and law, on these asserted grounds, petitioner should be granted relief.

<u>Grounds #9</u>

In addiction to Ground #9 noted as Plain Error p. 17-22 of this memo., petitioner further contends that the La. Supreme Court denial is erroneous and totally contrary to the well established laws of the U.S.. The U.S. Supreme Court held that: "The Sixth Amendment includes a compact statement of the rights necessary to a full defense. In all criminal prosecutions, the accused shall enjoy the right... to be informed of the nature and cause of the accusation; --". Because these rights are basic to our adversary system of criminal justice, they are part of the 'due process of law' that is guaranteed by the Fourteenth Amendment to defendants in the criminal courts of the States." Faretta v. California, 95 S.Ct. at 2532.

Petitioner contends that due to the above mentioned combined with all of the asserted facts and law in Grounds #9 p. 17-22 of this memo, the La. Supreme Court should have granted petitioner his relief.

27.

## Grounds #10

Petitioner's U.S. Const. 14th amend. right to due process and a fundamentally fair trial was violated due to the cumulative effect of all properly established U.S. Const. violations in this case.

## Facts / Law

Petitioner asserts that the properly raised U.S. Const. violations before this court that might not be so prejudicial as to amount to a deprivation of due process when conducting a balkanized issue-by-issue harmless error review, has cumulatively produced a trial setting that was fundamentally unfair, depriving petitioner of his U.S. Const 14th amend. right to due process. Matlock v. Rose, 731 F.2d 236, 1244 (6th Cir. 1984). This **proves** the La. Supreme Court over all denial o be erroneous and contrary to laws of the U.S. .

## Relief

Convictions and sentences be reversed and set aside.

## Conclusion

Wherefore, considering the claims asserted above, petitioner concludes that the tate court decision was both contrary to and an unreasonable application of well established federal law (28 U.S.C.A. § 2254. (1)) where the state court enied all of the above federal violations, Relief is due.

Respectfully Submitted,

*Preston Nelson #428579*

Preston Nelson #428579
L.S.P.
17577 Tunica Trace
Angola, La 70712

## Affidavit / Certificate of Service

I do hereby swear and affirm that the foregoing is true and correct to the best of my knowledge and belief.

I do hereby certify that the original of the foregoing has been mailed,

this __19__ day of __March__ 2018.

Preston Nelson #428579
Preston Nelson #428579
L.S.P.
17577 Tunica Trace
Angola, La 70712

29.