UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

PRESTON NELSON (#428579)                         CIVIL ACTION NO.

VERSUS                                            18-339-JWD-EWD

DARREL VANNOY, WARDEN

### ORDER AND REASONS

Before this Court is the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, filed by Preston Nelson ("Petitioner").[1] For the reasons that follow, an evidentiary hearing is ordered as to Claim 6.[2]

### I.   Procedural History

On October 19, 2011 Petitioner was indicted in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana on three counts of second degree murder, one count of attempted second degree murder, and one count of felon in possession of a firearm. After a jury trial on July 20, 2012, Petitioner was found guilty on all counts. On October 22, 2012, the trial judge sentenced Petitioner to life imprisonment without the possibility of parole, probation or suspension of sentence for each of the three second degree murder convictions. The trial judge sentenced the Petitioner to ten years imprisonment for the attempted second degree murder conviction and ten years imprisonment for the felon in possession of a firearm conviction.

Petitioner pursued a direct appeal and, on December 27, 2013, the Louisiana Court of Appeal for the First Circuit ("First Circuit") affirmed Petitioner's conviction and sentence.[3]

---

[1] R. Doc. 1.
[2] The matter was referred to the undersigned for the issuance of proposed findings of fact and a recommendation for disposition, including conducting an evidentiary hearing, if necessary. R. Doc. 17.
[3] *State v. Nelson*, No. 2013-0722 (La.App. 1 Cir. 12/27/13), 2013 WL 6858302.

Thereafter, Petitioner sought further review, which was denied by the Louisiana Supreme Court on August 25, 2014.[4]

Petitioner filed an application for post-conviction relief ("PCR application") on November 12, 2014 with the Nineteenth Judicial District Court. The Nineteenth Judicial District Court dismissed the application on September 10, 2015. The First Circuit denied Petitioner's writ on August 8, 2016 and the Louisiana Supreme Court subsequently denied Petitioner's writ on February 23, 2018.[5]

On March 19, 2018, Petitioner filed his application for writ of habeas corpus in this Court, asserting the following grounds for relief: (1) ineffective assistance of appellate counsel due to appellate counsel's failure to raise sufficiency of the evidence as an error on appeal, and (1C) because appellate counsel failed to raise the irreconcilable conflict with trial counsel; (2) sufficiency of the evidence, and (2B) his Fourteenth Amendment rights were violated when the state failed to prove specific intent in counts 1 and 2 of the indictment; (3) "Abanded" [sic]; (4) his Sixth Amendment right was violated when an irreconcilable conflict arose with his counsel and the trial court denied his motion to withdraw; (5) he was denied the right to testify; (6) ineffective assistance of trial counsel due to counsel's failure to object during the prosecution's opening statement, (6B) failure to subject the prosecution's case to a meaningful adversarial testing during the cross examination of a witness, Angela Jarvis, and (6C) failure to object to the introduction of a previously undisclosed *res gestae* statement used by the prosecution; (7) his Fourteenth Amendment rights were violated due to comments made by the prosecution during the opening statement, and (7B) when the state introduced a previously undisclosed *res gestae*

---

[4] *State v. Nelson*, 2014-0216 (La. 8/25/14), 147 So.3d 700.
[5] *State ex rel. Nelson*, 2016-1725 (La. 2/23/18), 236 So.3d 543.

statement; (8) the prosecution knowingly used perjured testimony; (9) Louisiana Code of Criminal Procedure Article 465 is unconstitutional; and (10) cumulative errors.[6]

After review of Petitioner's application and the state court record, this Court issued an Order on November 4, 2019 directing Respondent to provide copies of certain recorded witness statements produced in pretrial discovery.[7] Respondent complied with the Order by providing the recorded police interviews of Petitioner, Angela Jarvis, and Robin Johnson.[8]

## II.    Factual Background

The facts, as accurately summarized by the First Circuit, are as follows:

(1) "Elmgrove murders"

> On the night of June 29, 2011, Angela Jarvis was driving home in her Honda Accord to the Elmgrove Garden Apartments in Baton Rouge. Her friend, Ashley London, was in the front passenger seat. At the stop sign where Fairchild Street becomes Brady Road, an SUV or white truck, as described by Angela, was passing her Accord travelling the opposite way and stopped. Angela and the other driver looked at each other before Angela continued her drive home. As she turned off of Fairchild Street, Angela noticed that the white vehicle had turned around and began following her. When Angela pulled into a parking spot at her apartment, someone from the white vehicle fired a gunshot through the Accord's back window. As Ashley tried to get out of the car, the passenger of the white vehicle approached her and shot her. Angela saw the shooter's face. Angela then heard the driver of the white vehicle tell the shooter to make sure that both of them were dead. Ashley died from a bullet that perforated her lung and heart. When Angela pretended to be dead, the shooter left without firing another shot. Angela was not hit. Weeks later, as the police developed more leads, Angela was shown separate photographic lineups with Petitioner and G'Quan Baker, whom [Petitioner] identified as his brother. Angela identified [Petitioner] as the driver and Baker as the shooter.

---

[6] R. Doc. 1-1, pp. 2-23.
[7] R. Doc. 13.
[8] R. Doc. 16.

(2) "Kingfisher murders"

> On the early morning of July 29, 2011, detectives with the Baton Rouge Police Department responded to a crime scene on Kingfisher Avenue, which is within a few miles of Elmgrove Garden Apartments. Detectives found a Ford Explorer near the railroad tracks. Inside the vehicle, which was still running, was dead shooting victims Jessica Parker, in the driver seat, and Kevin Bowie, in the front passenger seat. They were both shot multiple times in the head. Kevin was also shot in the neck, and Jessica was also shot in the neck, back, and shoulder. At least nine spent casings were found in the Explorer, eight of them 9mm caliber and one a .25 auto caliber. The police soon developed [Petitioner] and Baker as suspects. In his two recorded interviews with detectives, [Petitioner] admitted that on the night Kevin and Jessica were shot, he and Baker were in the Explorer with them. However, it was earlier that night that he and Baker were with them, and it was only to go get gas, since Petitioner had run out of gas in his white, older model Ford Explorer. [Petitioner] denied that he shot anyone. Robin Johnson testified that she had been with [Petitioner] and Baker (who was staying with Robin) the night of July 29, 2011, but that they had dropped her off at her apartment about 9:00 p.m. Several hours later, at about 4:00 a.m., [Petitioner] and Baker came back to her apartment. Robin testified they both had guns: Baker, a Ruger 9mm semiautomatic and [Petitioner], a smaller caliber handgun. When asked on direct examination what they did with the guns, Robin stated, "They took them and they was (sic) cleaning them off." Darion Burkes testified he bought a Ruger 9mm handgun from the [Petitioner]. The 9mm casings found in the Explorer and two bullets, one removed from Kevin's body and one from Jessica's clothing before the autopsy, were tested and it was determined that they were all fired from the Ruger handgun [Petitioner] had sold to Darion.[9]

### III.   Substantive Review

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d). Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision

---

[9] *State v. Nelson*, 2013 WL 6858302, at *1.

4

that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Relief is authorized if a state court has arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than the Supreme Court on a set of materially indistinguishable facts.[10]

Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination.[11] Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness.[12] State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence.[13]

### *Claim 6: Ineffective Assistance of Counsel*

In Claim 6 Petitioner contends he received ineffective assistance of trial counsel because his trial counsel failed to object to the prosecutor's remarks in her opening statement, advising the jury that Petitioner and his brother, G'Quan Baker, told witness, Robin Johnson, that they committed the Kingfisher murders. Petitioner claims that his attorney should have objected. He also claims that he was prejudiced by the prosecutor's remarks and denied the right to a fair trial because Robin Johnson testified at trial that Petitioner never said that he admitted to the murder.

---

[10] *Williams v. Taylor*, 529 U.S. 362, 413 (2000).
[11] *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).
[12] *Id*. *See also Williams*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable").
[13] 28 U.S.C. § 2254(e)(1).

5

**Petitioner's Recorded Police Interviews**

Petitioner was interviewed by police on two separate occasions, August 17, 2011 and August 18, 2011. Both interviews are video recorded. Petitioner does not admit to the Kingfisher murders in either interview.[14]

**Robin Johnson's Recorded Police Interview**

Robin Johnson told the police during an August 4, 2011 interview that she had a sexual relationship with "Tootie" (G'Quan Baker) and that Tootie was staying at her house around the time of the Kingfisher murders. In the early morning hours, the same day as the Kingfisher murders, Tootie and another young man approximately 20-21 years of age knocked on her door and came in her house. Johnson told the police she did not know the other male who came into the house with Tootie. Johnson said that Tootie and the other young male were "hopping around," and that Tootie told her, "I got that boy," "I got them both," "I killed Bo (Kevin Bowie)." Johnson also told the police that Tootie was at her house again the Saturday after the Kingfisher murders and again told her that he shot Kevin Bowie, describing how Bowie's head looked after he fired the shot. Johnson did not tell police during the recorded interview that Petitioner made any statement to her, much less any admission that he committed either murder.[15]

**Prosecution Opening Statement**

During the state's opening statement, while discussing the Kingfisher murders, the prosecutor told the jury that they would be hearing testimony from a third-party witness, Robin Johnson. The prosecutor said the following: "Robin [Johnson] will tell you that these two men

---

[14] R. Doc. 16.
[15] Robin Johnson's interview was conventionally filed by Respondent on November 26, 2019 (R. Doc. 16).

have told her that they are, in fact, the ones that committed the homicide of Jessica Parker and Kevin Bowie."[16]

**Trial Testimony of Robin Johnson**

During the direct examination of Robin Johnson, the following exchange occurred:

    Q:    Did Preston say anything to you that night?
    A:    No ma'am.[17]

Later, during direct examination, Johnson testified:

    Q:    When did you see them next?
    A:    That Friday evening.
    Q.    And where did you see them that time?
    A:    They came back to my house.
    Q:    Did Preston Nelson say anything to you on that day?
    A:    No ma'am.

Later, during direct examination, Johnson further testified:

    Q.    Did you find out that Preston and G'Quan were responsible for killing for [sic] Jessica Parker and Kevin Bowie?
    A.    Yes, m'am.
    Q.    And how did you find that out?
    A.    G'Quan told it.
            Counsel:    Objection. Hearsay.
            Court:    Sustained. The jury will disregard the testimony.[18]

Petitioner's trial counsel did not object or move for a mistrial during the prosecution's opening statement, nor did counsel object or move for a mistrial once Robin Johnson testified that

---

[16] Trial Record, p. 197.
[17] Trial Record, p. 432.
[18] Trial Record, p. 436.

Petitioner never made any statement to her about the murders, or even point out in closing argument that the state had failed to provide the evidence it had promised.[19][20]

Petitioner raised this issue in his PCR application. To prove ineffective assistance under *Strickland*, a habeas petitioner must show 1) that counsel's performance fell below an "objective standard of reasonableness" and 2) "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different."[21]   The trial court identified the correct legal standard, *i.e. Strickland*, but  based its analysis under *Strickland* on an unreasonable determination of the facts in light of the evidence presented.

The Commissioner's Recommendation as to Claim 6 in Petitioner's PCR application analyzes that claim, in relevant part, as follows:

> The State contends that the law provides that in opening statement, the State shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge. La. C.Cr.P. art. 766.  The purpose of arts. 766-768 is to prevent surprise and to allow adequate time for preparation of the defense, as well as to avoid certain problems that have been attendant to the mentioning of confessions or inculpatory statements in the State's opening.  Notwithstanding art. 767, when a defendant is on notice of the State's intention to use his inculpatory statement, a defendant suffers no prejudice from a premature reference in the State's opening statements to the inculpatory statement.  Robin Johnson's DVD statement was provided to defense six months prior to trial on December 6, 2011. (R. p 54 item 41).

---

[19] Although Claim 6 does not specifically raise the failure of trial counsel to move for a mistrial following Robin Johnson's testimony, in later claims, Petitioner does note that Robin Johnson's testimony was inconsistent with the prosecution's opening statement and that his alleged inculpatory statement was never ruled admissible or presented to the jury and that the defense was not effectively on notice of the use of an inculpatory statement based on Robin Johnson's police interview.  R. Doc. 1-1, pp. 12-14.  Because Petitioner is representing himself at this juncture, he is entitled to a liberal construction of his pleadings.  *Bernard v. C.I.R.*, 539 Fed.Appx. 431 (5th Cir. 2013) (per curiam), citing *Johnson v. Quarterman*, 479 F.3d 358, 359 (5th Cir. 2007) (cleaned up).
[20] *See* R. Doc. 12, p. 16 ("The lack of counsel's timely objection to the opening remark is hardly prejudicial. In fact, it is more likely that the jury would have viewed the state's case in a less favorable light for its failure to present evidence it had 'promised' the jury at the beginning of trial. *See e.g. State v. Lewis*, 2016-0224, p. 18-19 (La.App. 4 Cir. 12/29/16), 209 So.3d 202, 214, reh'g denied (Jan. 18, 2017). It is logical to conclude that the state's failure or inability to elicit the evidence outlined in its opening statement 'redounds to the advantage and benefit of the accused.' Id.").  Respondent's argument on this point would be more persuasive if trial counsel had pointed out the failure of the state to introduce the "promised" evidence.
[21] *Strickland v. Washington*, 466 U.S. 668 (1984).

> The Commissioner agrees with the State that even if the State erred in mentioning Mr. [sic] Johnson's statement, Petitioner has not demonstrated with reasonable probability that the result of the trial would have been different. Accordingly, Petitioner cannot show that he was prejudiced by his counsel's alleged failure to object to the statement.

The relevancy of the trial court's analysis of Claim 6 under state evidentiary standards is not entirely clear; however, the conclusion is based on two unreasonable factual determinations in light of the evidence presented. Frist, the trial court evaluated Petitioner's claim based on the assumption that the evidence mentioned by the prosecutor in the opening statement was later admitted into evidence. The trial court relied on the following language from *State v. Whitmore*, 353 So.2d 1286 (La. 1977), "when a defendant is on notice of the state's intention to use his inculpatory statement *and the statements are later admitted into evidence*, a defendant suffers no prejudice from a premature reference in the State's opening statement to the inculpatory statement." (emphasis added). A review of the state court record shows by clear and convincing evidence that no statement of Petitioner (or Baker) was ever admitted into evidence. Further, the trial court's conclusion--that Petitioner was on notice before trial that Robin Johnson intended to testify about an inculpatory statement based on production of her statement to police in discovery—is also based on an unreasonable interpretation of the facts. [22] In Robin Johnson's statement produced by the state she never told the police that Petitioner admitted to her that he committed the murders.[23]

---

[22] *See Wiggins v. Smith*, 539 U.S. 510, 528 (2003) (state court unreasonably applied United States Supreme Court precedent when it relied on an erroneous factual finding).

[23] The Commissioner's Recommendation is the last opinion regarding this issue containing reasons. The state trial court adopted the recommendation, after which the First Circuit summarily denied writs. As to the ineffective assistance of counsel claim in Petitioner's PCR application, the Louisiana Supreme Court also denied writs, stating: "Relator fails to show he received ineffective assistance of counsel of [sic] under the standard of *Strickland v. Washington*, 466 U.S. 668 (1984)." *State ex rel. Nelson*, 236 So.3d 543.

*Strickland* also requires that a petitioner show that counsel's failures prejudiced his defense. Petitioner's counsel did not object or request a mistrial based on the prosecution's opening statement and Robin Johnson's trial testimony. The prejudice question is, therefore, whether, because Petitioner's counsel did not object, Petitioner was deprived of the procedural right to a mistrial/new trial.

Under Louisiana law, prosecutorial bad faith or clear and substantial prejudice are grounds for a mistrial.[24] Prosecutorial bad faith occurs if the prosecution failed to produce evidence referred to in its opening statement and the prosecution knew at the time of giving the opening statement that the evidence would not be admitted.[25] "When the prosecutor details evidence in his opening statement which is subsequently not admitted, he takes the risk that a mistrial may have to be granted."[26]

From a preliminary review of the record, prosecutorial bad faith may have occurred when the prosecutor told the jury in her opening statement that Robin Johnson would testify that *Petitioner and Baker* admitted to the Kingfisher murders. The trial court record establishes that Robin Johnson never expressly told the police during her August 4, 2011 recorded interview that Petitioner said anything to her or admitted that he committed the Kingfisher murders, and Robin Johnson testified at trial that Petitioner never said anything to her. Accordingly, the prosecutor may have known at the time of the opening statement that Robin Johnson was not going to testify that Petitioner admitted to the murders.[27] If prosecutorial bad faith is established, a mistrial was

---

[24] *See State v. Horne*, 554 So.2d 820, 824 (La.App. 5 Cir. 12/13/89), citing *State v. Bell,* 279 So.2d 164 (La. 1973); *State v. Green,* 343 So.2d 149 (La. 1977).
[25] *Cf. Horne*, 554 So.2d at 824 (state not in bad faith because believed the witnesses would testify at time of opening statement). *See also*, *State v. Antoine*, 841 So.2d 874, 878-79 (La.App. 5 Cir. 2/25/03).
[26] *Horne*, 554 So.2d at 824, citing *Bell*, 279 So.2d 164.
[27] It also appears that the prosecutor knew or should have known at the time of the opening statement that Baker's statement to Johnson was classic hearsay and would likely not be admitted into evidence. Additionally, even if Baker's statement had been admitted, the fact that *Baker* may have said he and Petitioner committed the Kingfisher murders is not what the prosecutor said the evidence would show.

10

possible, such that Petitioner may be able to show prejudice in trial counsel's failure to object or request a mistrial.

Petitioner has made a prima facie case for ineffective assistance of counsel as to Claim 6; however, it should be emphasized that the concerns raised in this Order are based on a review of the record as it currently stands. The evidence presented at the evidentiary hearing could change the preliminary analysis. There may be an explanation for why the prosecutor told the jury that Petitioner admitted the murders to Robin Johnson that does not constitute bad faith. There also may be an explanation as to why trial counsel never objected or moved for a mistrial when it appears that there is no evidence the admission ever happened. For these reasons, an evidentiary hearing as to Claim 6 is necessary.[28]

Under § 2254(e)(2), the court may not hold an evidentiary hearing if a habeas applicant has "failed to develop the factual basis of a claim in State court proceedings."[29] The State does not argue in its opening brief that the § 2254(e)(2) bar applies. "In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court."[30] In making this determination, courts must consider whether an evidentiary hearing could "enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."[31]

The phrase "failed to develop" means "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel."[32] Petitioner did not fail to develop the factual basis of

---

[28] The other claims asserted in Petitioner's habeas application can be decided based solely on review of the state court record.
[29] *Morris v. Dretke*, 413 F.3d 484, 499 (5th Cir. 2005).
[30] *Schriro v. Landrigan*, 550 U.S.465, 468 (2007).
[31] *Schriro*, 550 U.S. at 474.
[32] *Austin v. Davis*, 876 F.3d 757, 798-99 (5th Cir. 2017).

11

the claim in the state court proceedings. He was never permitted to further develop his claim due to the trial court's summary dismissal of this claim based on an unreasonable determination of the facts. Neither the prosecutor nor Petitioner's counsel was afforded the opportunity at the state court level to explain the reasons for their actions. Thus, § 2254(e)(2) does not prohibit an evidentiary hearing, and, for the reasons stated above, an evidentiary hearing may establish the requirements of *Strickland* as to Claim 6.

In light of the decision to schedule an evidentiary hearing, **IT IS ORDERED** that counsel will be appointed to represent Petitioner pursuant to 18 U.S.C. § 3006A(a)(2)(B) and Rule 8(c) of the Rules Governing Section 2254 Cases in the United States District Courts. A separate order appointing the Office of the Federal Public Defender to either represent Petitioner or refer this matter to a private attorney who takes court-appointed cases will issue.

**IT IS FURTHER ORDERED** that the Clerk of Court shall **STAY AND ADMINISTRATIVELY CLOSE** this case until counsel is appointed for Petitioner.

When counsel for Petitioner is appointed, the matter will be reopened, and a telephone conference will be scheduled to discuss the evidentiary hearing with all counsel.

Signed in Baton Rouge, Louisiana, on March 12, 2021.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**