## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**PRESTON NELSON (#428579)**                              **CIVIL ACTION NO.**

**VERSUS**                                              **18-339-JWD-EWD**

**DARREL VANNOY, WARDEN**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 25, 2026.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**PRESTON NELSON (#428579)**                    **CIVIL ACTION NO.**

**VERSUS**                                       **18-339-JWD-EWD**

**DARREL VANNOY, WARDEN**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before this Court is a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (the "Petition"),[1] filed by Preston Nelson ("Petitioner" or "Nelson"). The State has answered, arguing that certain claims should be dismissed for procedural reasons and that the other claims lack merit.[2] Counsel was appointed for Petitioner,[3] and an evidentiary hearing was held only as to Claim 6–ineffective assistance of trial counsel for failure to object to the prosecutor's opening statement.[4] It is recommended that the Petition be denied.

I.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND

    A.  Procedural History

On October 19, 2011 Petitioner was indicted in Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana on three counts of second degree murder, one count of attempted second degree murder, and one count of felon in possession of a firearm. After a jury trial on July 20, 2012, Petitioner was found guilty on all counts. On October 22, 2012, the trial judge sentenced Petitioner to life imprisonment without the possibility of parole, probation or suspension of sentence for each of the three second degree murder convictions. The trial judge

---

[1] R. Doc. 1.

[2] R. Docs. 8, 12.

[3] R. Docs. 18, 20.

[4] R. Doc. 53.

sentenced the Petitioner to ten years imprisonment for the attempted second degree murder conviction and ten years imprisonment for the felon in possession of a firearm conviction.

Petitioner pursued a direct appeal and, on December 27, 2013, the Louisiana Court of Appeal for the First Circuit ("First Circuit") affirmed Petitioner's convictions and sentences.[5] Petitioner then sought further review, which was denied by the Louisiana Supreme Court on August 25, 2014.[6]

Petitioner filed an application for post-conviction relief ("PCR Application") on November 12, 2014 in the state trial court, which was dismissed on September 10, 2015. The First Circuit denied Petitioner's writ on August 8, 2016, and the Louisiana Supreme Court denied review on February 23, 2018.[7]

On March 19, 2018, Petitioner filed his Petition in this Court,[8] asserting the following grounds for relief: (1) ineffective assistance of appellate counsel for failure to raise sufficiency of the evidence as an error on appeal, and (1C) for failure to raise the irreconcilable conflict with trial counsel; (2) insufficiency of the evidence as to the Elmgrove murder, and (2B) his Fourteenth Amendment rights were violated when the state failed to prove specific intent in counts 1 and 2 of the indictment; (3) "Abanded" [sic];[9] (4) his Sixth Amendment right was violated when an irreconcilable conflict arose with his counsel and the trial court denied his motion to withdraw; (5) he was denied the right to testify; (6) ineffective assistance of trial counsel due to counsel's failure

---

[5] *State v. Nelson*, No. 2013-0722 (La.App. 1 Cir. 12/27/13), 2013 WL 6858302.

[6] *State v. Nelson*, 2014-0216 (La. 8/25/14), 147 So.3d 700.

[7] *State ex rel. Nelson*, 2016-1725 (La. 2/23/18), 236 So.3d 543.

[8] Respondent acknowledges that the Petition is timely. R. Doc. 12, p. 2.

[9] Petitioner asserted a claim in his PCR Application labeled "Claim #3," in which he argued that his indictment was defective because there was no indication in the court's minute entries that it was ever read into open court. Petitioner has not presented this claim in his federal Petition or briefed the issue in this Court, therefore, the claim is abandoned.

to object during the prosecution's opening statement, (6B) failure to subject the prosecution's case to meaningful adversarial testing during the cross-examination state witness, Angela Jarvis, and (6C) failure to object to the introduction of a previously undisclosed *res gestae* statement used by the prosecution; (7) his Fourteenth Amendment rights were violated due to comments made by the prosecution during the opening statement, and (7B) when the state introduced a previously undisclosed *res gestae* statement; (8) the prosecution knowingly allowed perjured testimony to go uncorrected; (9) Louisiana Code of Criminal Procedure Article 465 is unconstitutional; and (10) cumulative errors.[10]

Respondent submitted a response[11] to the Petition arguing that Claims 2B, 6C, 7B and 10 are unexhausted; Claims 5, 7, and 9 are not cognizable in habeas review; and the remaining claims lack merit. After review of the Petition and the state court record, this Court issued an Order[12] directing Respondent to provide copies of certain recorded witness statements produced in pretrial discovery. Respondent complied with the Order by providing the recorded police interviews of Petitioner, Angela Jarvis, and Robin Johnson.[13]

On March 12, 2021 the Court issued an Order and Reasons,[14] finding that the last reasoned state court opinion on Petitioner's ineffective assistance of trial counsel claim (Claim 6) was an unreasonable determination of the facts in light of the evidence presented.[15] The Court ordered an

---

[10] R. Doc. 1-1, pp. 2-23.

[11] R. Doc. 12.

[12] R. Doc. 13.

[13] R. Doc. 16. The Court did not use the statements provided by Respondent in determining whether the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. The statements were used to determine whether an evidentiary hearing was necessary on the issue of prosecutorial bad faith.

[14] R. Doc. 18.

[15] As explained in the Order and Reasons, the Commissioner's errors were "beyond any possibility for fairminded disagreement." *See Harrington v. Richter*, 562 U.S. 86, 103 (2011). The record affirmatively demonstrates: (1) G'Quan Baker's hearsay statement was never admitted into evidence, (2) Petitioner never told Robin Johnson that he

evidentiary hearing and appointed counsel to represent Petitioner.[16] An evidentiary hearing was held as to Claim 6 only,[17] and the parties submitted post-hearing briefs.[18]

### B. Factual Background

The facts of the underlying case, as summarized by the First Circuit, are as follows:

(1) "Elmgrove murder"

> On the night of June 29, 2011, Angela Jarvis was driving home in her Honda Accord to the Elmgrove Garden Apartments in Baton Rouge. Her friend, Ashley London, was in the front passenger seat. At the stop sign where Fairchild Street becomes Brady Road, an SUV or white truck, as described by Angela, was passing her Accord travelling the opposite way and stopped. Angela and the other driver looked at each other before Angela continued her drive home. As she turned off of Fairchild Street, Angela noticed that the white vehicle had turned around and began following her. When Angela pulled into a parking spot at her apartment, someone from the white vehicle fired a gunshot through the Accord's back window. As Ashley tried to get out of the car, the passenger of the white vehicle approached her and shot her. Angela saw the shooter's face. Angela then heard the driver of the white vehicle tell the shooter to make sure that both of them were dead. Ashley died from a bullet that perforated her lung and heart. When Angela pretended to be dead, the shooter left without firing another shot. Angela was not hit. Weeks later, as the police developed more leads, Angela was shown separate photographic lineups with [Petitioner] and G'Quan Baker, whom [Petitioner] identified as his brother. Angela identified [Petitioner] as the driver and Baker as the shooter.

(2) "Kingfisher murders"

> On the early morning of July 29, 2011, detectives with the Baton Rouge Police Department responded to a crime scene on Kingfisher Avenue, which is within a few miles of Elmgrove Garden Apartments. Detectives found a Ford Explorer near the railroad tracks. Inside the vehicle, which was still running, was dead shooting victims Jessica Parker, in the driver seat, and Kevin Bowie,

---

committed the Kingfisher murders, and (3) Robin Johnson never told law enforcement that Petitioner admitted the Kingfisher murders to her.

[16] *Id.* at 9.

[17] R. Docs. 53, 56.

[18] R. Docs. 57, 58, 61, 62.

in the front passenger seat. They were both shot multiple times in the head. Kevin was also shot in the neck, and Jessica was also shot in the neck, back, and shoulder. At least nine spent casings were found in the Explorer, eight of them 9mm caliber and one a .25 auto caliber. The police soon developed [Petitioner] and Baker as suspects. In his two recorded interviews with detectives, [Petitioner] admitted that on the night Kevin and Jessica were shot, he and Baker were in the Explorer with them. However, it was earlier that night that he and Baker were with them, and it was only to go get gas, since [Petitioner] had run out of gas in his white, older model Ford Explorer. Defendant denied that he shot anyone. Robin Johnson testified that she had been with [Petitioner] and Baker (who was staying with Robin) the night of July 29, 2011, but that they had dropped her off at her apartment about 9:00 p.m. Several hours later, at about 4:00 a.m., [Petitioner] and Baker came back to her apartment. Robin testified they both had guns: Baker, a Ruger 9mm semiautomatic and [Petitioner], a smaller caliber handgun. When asked on direct examination what they did with the guns, Robin stated, "They took them and they was (sic) cleaning them off." Darion Burkes testified he bought a Ruger 9mm handgun from [Petitioner]. The 9mm casings found in the Explorer and two bullets, one removed from Kevin's body and one from Jessica's clothing before the autopsy, were tested and it was determined that they were all fired from the Ruger handgun [Petitioner] had sold to Darion.[19]

## II.    LAW AND ANALYSIS

### A.  Procedural Default - Claims 6(C), 7(B), 8, and 10

"A federal court generally cannot review the merits of a state prisoner's habeas petition if the claims in the petition are procedurally defaulted."[20] Procedural default can occur in two ways. "First, if the prisoner has never fairly presented that claim to the highest available state court, the claim is unexhausted."[21] "Second, if the prisoner has presented the claim to the highest available state court but that court has dismissed the claim on a state-law procedural ground instead of

---

[19] *State v. Nelson*, 2013 WL 6858302, at * 1.

[20] *Rocha v. Thaler*, 626 F.3d 815, 820 (5th Cir. 2010).

[21] *Id.*

deciding it on the merits, the claim has been decided on an independent and adequate state-law ground."[22]

The exhaustion requirement is satisfied only when a petitioner's claims have been properly presented to the state's highest court, either on direct review or on post-conviction attack.[23] In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts."[24] Each claim must be presented to the state's highest court, even when review by that court is discretionary.[25]

For procedural default based on dismissal of a prisoner's claim because of a state procedural rule, the rule must be both independent of the merits of the federal claim and an adequate basis for the court's decision. A state procedural rule is an adequate basis for the court's decision only if it is "strictly or regularly applied evenhandedly to the vast majority of similar claims."[26]

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.* the conviction of one who is actually innocent.[27] Where a petitioner fails to show cause and prejudice for a procedural default,

---

[22] *Id.*

[23] *Bufalino v. Reno,* 613 F.2d 568, 570 (5th Cir. 1980).

[24] *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).

[25] *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987).

[26] *Rocha* at 821, citing *Amos v. Scott*, 61 F.3d 333, 339 (5th Cir.) (emphasis omitted), cert. denied, 516 U.S. 1005 (1995).

[27] *Id.* at 822.

he may only obtain review of his constitutional claims if he falls within "the narrow class of cases … implicating a fundamental miscarriage of justice."[28] Proving an actual innocence claim is "daunting."[29] "The petitioner must support his allegations with new, reliable evidence that was not presented at trial and must show that it was "more likely than not that no reasonable juror would have convicted him in the light of the new evidence."[30]

> 1. *Claim 6(C): Ineffective Assistance of Counsel for Failure to Object to Res Gestae Statement; Claim 7(B): State's Introduction of Res Gestae Statement was Due Process Violation; and Claim 10: Cumulative Errors*

Petitioner asserts that he received ineffective assistance of counsel because his trial counsel failed to object to Angela Jarvis's testimony about what he said during the Elmgrove murder in Claim 6(C). Petitioner asserts that the state's introduction of the *res gestae* statement violated his due process rights in Claim 7(B).[31] In Claim 10, Petitioner asserts that his due process rights were violated due to the cumulative effect of the constitutional violations in this case.[32] Respondent argues that these claims are unexhausted and procedurally defaulted.[33] Petitioner did not raise these claims on direct appeal or when he initially filed his PCR Application on November 12, 2014. On August 13, 2015 the trial court Commissioner issued a Recommendation for denial of the PCR Application. On August 25, 2015, the Petitioner moved for leave to file a second supplemental brief advancing Claims 6(C), 7(B), and 10, as well as other claims. The trial court did not address

---

[28] *See Schlup v. Delo*, 513 U S. 298, 314-15 (1995), citing *McCleskey v. Zant*, 499 U.S. 467, 494 (1991).

[29] *McGowen v. Thaler*, 675 F.3d 482, 499 (5th Cir. 2012), citing *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (quoting *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)).

[30] *Schlup*, 513 U.S. at 327.

[31] R. Doc. 1-1, pp. 11-14.

[32] R. Doc. 1-1, p. 27.

[33] R. Doc. 12, pp. 4-6.

Petitioner's request for leave to file the second supplemental brief when it dismissed the PCR Application on September 10, 2015.

In *Loynachan v. Davis*,[34] the Fifth Circuit held that a claim is not fairly presented to the state courts when it is presented for the first and only time in a procedural context in which its merits will not *necessarily* be considered. Here, Petitioner's request to amend his PCR Application was presented in a procedural context where the trial court was not required to review the merits. It was within the discretion of the trial court judge to allow the amendment or not.[35] The Commissioner's Recommendation does not address the request for leave to file the second supplemental brief at all because the request was not made until after the Commissioner's Recommendation was issued. The trial court subsequently dismissed Petitioner's PCR Application without ruling on the request to file the second supplemental brief, implicitly denying the amendment. Because Petitioner failed to "fairly present" these claims to the state's highest court Claims 6(C), Claim 7(B), and Claim 10 are unexhausted.[36]

### 2. Claim 8: Prosecution Knowingly Used Perjured Testimony

In Claim 8, Petitioner contends that the prosecution knowingly used perjured testimony when Angela Jarvis testified that she saw Petitioner at the corner of Brady and Fairchild streets. This issue was not raised by Petitioner in either his direct appeal or PCR Application. Petitioner argued in his PCR Application that Jarvis's testimony regarding seeing Petitioner at the

---

[34] 766 Fed.Appx. 156 (5th Cir. 2019).

[35] *See State ex rel. Duhon v. Whitley,* 92-1740 (La. 9/2/94), 642 So.2d 1273 (district courts should exercise discretion in determining whether the interests of justice require that an applicant for post-conviction relief be given an opportunity to amend and supplement a timely filed application for post-conviction relief).

[36] This is not a case where the "state appellate court chooses to ignore in its opinion a fairly presented federal constitutional claim squarely raised in petitioner's brief in state court." *Loynachan*, 766 Fed.Appx. at 160, citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989) (citing *Smith v. Digmon*, 434 U.S. 332, 333 (1978)). While under those circumstances a petitioner may exhaust his claims, here Petitioner presented Claims 6(C), 7(B), and 10 in a procedural context in which the merits would not necessarily be considered.

intersection of Brady and Fairchild streets was insufficient to support his conviction (because those streets do not intersect) and that trial counsel was ineffective for failing to subject Jarvis's testimony to meaningful adversarial testing on cross-examination, but Petitioner did not raise the issue of prosecutorial misconduct with respect to Jarvis's testimony.

To exhaust a particular claim, a petitioner "must have fairly presented the substance of his claim to the state courts."[37] "It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made."[38] If a petitioner uses one set of operative facts to raise an argument in state court and then relies on those same facts to argue a different legal theory in federal court, the claim is still unexhausted.[39] Although Petitioner asserted the same facts to support other claims at the state court level, prosecutorial misconduct is an entirely different legal theory presented for the first time in the Petition in federal court. Therefore, Claim 8 is unexhausted.[40]

### 3.  Claims 6(C), 7(B), 8, and 10 are Procedurally Defaulted and Cannot Be Reviewed By This Court

A habeas petitioner who has failed to properly present a federal constitutional claim to the state courts may nonetheless be considered to have "technically exhausted" his state remedies if the state courts are no longer available for a review of the claim because of a procedural bar.[41] A claim is considered to be "technically exhausted" when state relief is no longer procedurally

---

[37] *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997), cert. denied, 523 U.S. 1139 (1998).

[38] *Wilder*, 274 F.3d at 259, quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

[39] *Wilder*, 274 F.3d at 259, citing *Vela v. Estelle*, 708 F.2d 954, 958 n.5 (5th Cir. 1983).

[40] Although Respondent did not argue that Claim 8 is unexhausted, this Report and Recommendation constitutes notice to Petitioner that this Court is raising the issue of procedural default as to Claim 8 on its own motion. Petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this Report. *See Magouirk v. Phillips,* 144 F.3d 348, 359 (5th Cir. 1998) (district court has discretion to raise procedural default on its own motion upon providing petitioner with notice and an opportunity to respond; the objection period for responding to a magistrate judge's report and recommendation affords notice and an opportunity to respond).

[41] *See Busby v. Dretke,* 359 F.3d 708, 724 (5th Cir. 2004).

available in connection with the claim, without regard to whether the claim was actually exhausted by presentation before the state courts.[42] In such instance, where a petitioner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claim in order to meet the exhaustion requirement would now find the claim procedurally barred, then the claim is technically exhausted and procedurally defaulted in the state court.[43]

If Petitioner were to assert Claims 6(C), 7(B), 8, or 10 before the state courts in a second application for post-conviction relief, the state courts would reject the application as procedurally barred under La. Code Crim. Proc. Ann. art. 930.4(E), which states that a "successive application shall be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application," or in reliance on Article 930.8(A), which states that "[n]o application for post-conviction relief ... shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final...." Articles 930.4(E) and 930.8 have been found to be independent and adequate state grounds for rejecting consideration of post-conviction relief claims, and the federal courts have relied on these statutes in finding claims to be technically exhausted and procedurally defaulted.[44] As such, this Court is prohibited from undertaking review of Claims 6(C), 7(B), 8, or 10.[45]

---

[42] *See Coleman v. Thompson,* 501 U.S. 722, 732 (1991).

[43] *Nobles,* 127 F.3d at 420; s*ee also Magouirk,* 144 F.3d 348 .

[44] *See, e.g., Williams v. Department of Corrections,* 444 Fed.Appx. 833, 834 (5th Cir. 2011) ("This court has recognized a dismissed as untimely under Article 930.8 as an independent and adequate state procedural bar. *See Glover v. Cain,* 128 F.3d 900, 902 (5th Cir. 1997)."); *Jones v. Vannoy*, No. 19-505, 2021 WL 5467019, at *3 (M.D. La. Nov. 3, 2021), citing *Ardison v. Cain*, 264 F.3d 1140, 2001 WL 822445, at *4–5 (5th Cir. 2001); *Besse v. Tanner*, No. 16-2992, 2017 WL 2936311, at *8 (E.D. La. July 7, 2017); *Bell v. Baton*, No. 11-304, 2012 WL 5364239, at *3 (M.D. La. Sep. 24, 2012), report and recommendation adopted, 2012 WL 5364237, at *1 (M.D. La. Oct. 31, 2012) (concluding that Article 930.4(E) has been found to be an adequate, independent state ground for rejecting a petition for post-conviction relief, and the federal courts have relied on this statute in finding claims to be technically exhausted but procedurally defaulted).

[45] Petitioner did not reply to the Respondent's Answer, invoking the defense of procedural default for Claims 6(C), 7(B), and 10. Thus, he has not asserted that the procedural default should be excused because he can show "cause and prejudice" or because of "actual innocence."

11

## B.  Deferential Review - Claims 1, 1(C), 2, 2(B), 4, 5, 6(B), and 9

Pursuant to 28 U.S.C. § 2254(d), an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Relief is authorized if a state court has arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than the Supreme Court on a set of materially indistinguishable facts.[46]

Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination.[47] Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness.[48] State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence.[49]

---

[46] *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

[47] *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).

[48] *Id. See also Williams*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable.").

[49] 28 U.S.C. § 2254(e)(1).

1.  *Claim (1A): Ineffective Assistance of Appellate Counsel; Claim (2): Sufficiency of the Evidence; and Claim (2B) Failure to Prove Specific Intent*

In Claim 1(A), Petitioner asserts that he received ineffective assistance of appellate counsel because appellate counsel failed to raise sufficiency of the evidence to support the Elmgrove convictions (second degree murder of Ashley London and attempted second degree murder of Angela Jarvis). In Claim 2, Petitioner asserts that there was insufficient evidence to support his conviction for the second degree murder of Ashley London and the attempted second degree murder of Angela Jarvis. In Claim 2(B), Petitioner asserts that the state failed to prove the requisite specific intent for convictions of second degree murder and attempted second degree murder.[50] Claims 1(A), 2, and 2(B) are addressed together, as they involve overlapping analysis.

On federal habeas corpus review, the evidentiary sufficiency of a state court conviction is governed by the analysis set forth in *Jackson v. Virginia,*[51] which reflects the federal constitutional due process standard. *Jackson* asks a reviewing court to determine, "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[52] In conducting that review, a federal habeas corpus court may not substitute its view of the evidence for that of the fact finder but must consider all of the evidence in the light most favorable to the verdict.[53]

Petitioner has not shown that he is entitled to federal habeas relief as to Claims 2 or 2(B). The State of Louisiana prosecuted Petitioner under the theory that he was a principal to the second

---

[50] Respondent argues that this claim is unexhausted. Because the claim is without merit, it is not necessary to reach Respondent's argument that the claim is unexhausted. *See* 28 U.S.C. § 2254(b)(2).

[51] 443 U.S. 307 (1979).

[52] *Jackson*, 443 U.S. at 319.

[53] *See Weeks v. Scott,* 55 F.3d 1059, 1061 (5th Cir. 1995).

13

degree murder of Ashley London and the attempted second degree murder of Angela Jarvis. The

Louisiana Supreme Court explained the concept of principal, in *State v. Mitchell:*[54]

> All persons can be convicted as a principal to a crime if he is 'concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime.' La.Rev.Stat. § 14:24. Not all principals are automatically guilty of the same grade of offense as the main offender because the mental state of the offenders may be different. *State v. Brooks,* 505 So.2d 714(La.), *cert. denied,* 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987). Thus, 'an individual may only be convicted as a principal for those crimes which he personally has the requisite mental state.' *Id.* The intent of the accomplice cannot be inferred to the accused. *State v. Holmes,* 388 So.2d 722 (La.1980).
>
> Specific intent is 'that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.' La.Rev.Stat. § 14:10(1). Because specific intent is a state of mind, it need not be proven as a fact but may be inferred from the circumstances of the transaction and the actions of the defendant. *State v. Graham,* 420 So.2d 1126 (La.1982).

La. R.S. § 14:30.1(A)(1) defines second degree murder (in part) as the killing of a human

being when the offender has a specific intent to kill or inflict great bodily harm. Specific criminal

intent is that state of mind which exists when the circumstances indicate that the offender actively

desired the prescribed criminal consequences to follow his act or his failure to act.[55] Because

specific intent is a state of mind, it need not be proven as a fact but may be inferred from the

circumstances of the situation and the actions of the defendant.[56] Specific intent to kill or inflict

---

[54] 99-3342 (La. 10/17/00), 772 So.2d 78, 82.

[55] La. R.S. § 14:10.

[56] *State v. Brooks,* 86-1559 (La. 4/6/87), 505 So.2d 714, 717.

great bodily harm can be inferred from a shooting which occurs at a fairly close range.[57] Although the statute for the completed crime of second degree murder allows for a conviction based on "specific intent to kill or to inflict great bodily harm," La. R.S. 14:30.1, attempted second degree murder requires specific intent to kill.[58]

Angela Jarvis testified to the following at trial: Jarvis and Ashley London left London's brother's apartment in Jarvis's vehicle.[59] Jarvis was driving and London was riding in the passenger seat.[60] When they reached the stop sign at Brady and Fairchild streets, a white SUV[61] approached and stopped.[62] Jarvis got a good look at the two individuals in the white SUV.[63] When Jarvis drove away from the stop sign, she looked in her rear view mirror and saw that the white SUV was closely following her vehicle.[64] Jarvis pulled into her apartment complex and the back glass of her vehicle was shot out.[65] Jarvis hit her head on the steering wheel and laid there, but London opened the passenger door. Then, the passenger of the white SUV approached the passenger door and opened fire, hitting London.[66] After London was shot, Jarvis heard the driver of the SUV ask the shooter "did he get them" and order the shooter to make sure that Jarvis and

---

[57] *State v. Cummings,* 99-3000 (La.App. 1 Cir. 11/3/00), 771 So.2d 874, 876, citing La. R.S. 14:301.1(A)(A) and *State v. Powell*, 94-1390, at p. 12 (La.App. 1 Cir. 10/6/95), 671 So.3d 493, 500, writ denied, 95-2710 (La. 2/9/96), 667 So.2d 529.

[58] *State v. Huizar,* 81-2749, (La. 5/17/82), 414 So.2d 741, 746.

[59] Tr. Trans., p. 254. References to the trial record are "Tr. Trans. p. ___").

[60] *Id.* at 254-255.

[61] Jarvis used the terms "truck" and "SUV" interchangeably during her testimony.

[62] Tr. Trans., p. 255.

[63] *Id.* at 256.

[64] *Id.* at 256.

[65] *Id.* at 256.

[66] *Id.* at 257.

15

London were dead.[67] A couple of months later Jarvis identified the shooter and Petitioner in photo lineups.[68] Jarvis also positively identified Petitioner as the driver of the SUV during the trial.[69]

Viewing the evidence in the light most favorable to the prosecution, Petitioner has not established a basis for relief as a rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. Jarvis's testimony recounting the shooting established all elements of principal to second degree murder and attempted second degree murder. Petitioner's role in driving the SUV and following Jarvis and London's vehicle to the apartment combined with his words counseling the shooter to make sure both were dead, establish that Petitioner was present and had specific intent to kill Ashley London and Angela Jarvis.

Petitioner argues, contrary to Angela Jarvis's testimony, Brady and Fairchild streets do not intersect. He goes on to state that, because these streets do not intersect, it was "physically impossible" for Jarvis to identify him. As noted by trial court Commissioner in the Recommendation for dismissal of Petitioner's PCR Application, "the jury could assume even if Jarvis was confused about which intersection she saw the vehicle in question she could still identify [Petitioner] as the driver."[70] As a rational trier of fact could have found all elements of principal to second degree murder and attempted second degree murder beyond a reasonable doubt, including specific intent to kill. Claim 2 and Claim 2(B) are without merit.

As to Claim 1, Petitioner's ineffective assistance of appellate counsel claim, Petitioner must first show that his appellate attorney was objectively unreasonable in failing to find arguable issues to appeal, and also a reasonable probability that, but for his counsel's unreasonable failure

---

[67] *Id.* at 257.

[68] *Id.* at 260-261.

[69] *Id.* at 261.

[70] Commissioner's Recommendation, p. 5.

to file a merits brief raising these issues, he would have prevailed on his appeal.[71] Appellate counsel need not advance every argument, regardless of merit, urged by a petitioner.[72] An experienced attorney knows the importance of "winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."[73]

Petitioner has failed to show that a sufficiency of the evidence argument would have been stronger than the arguments that were raised on appeal. As noted in the Commissioner's Recommendation, an appellate challenge to sufficiency of the evidence is rarely successful because the reviewing court must consider the evidence in the light most favorable to the prosecution and the evidence is sufficient to support the conviction if any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[74] This Court presumes that appellate counsel exercised his professional judgment to raise the issues on appeal that he considered most meritorious, including whether the trial court erred in failing to sever the trials of the Elmgrove and Kingfisher incidents and whether the trial court erred in prohibiting Petitioner from attacking Darion Burkes' credibility with his juvenile adjudication.[75] As such, Claim 1 is also without merit.

As the record demonstrates that there was sufficient evidence to support Petitioner's conviction for the second degree murder of Ashley London and the conviction for the attempted second degree murder of Angela Jarvis, and as Petitioner's appellate counsel's performance cannot

---

[71] *Smith v. Robbins,* 528 U.S. 259, 285 (2000); s*ee also Briseno v. Cockrell,* 274 F.3d 204, 207 (5th Cir. 2001).

[72] *Evitts v. Lucey*, 469 U.S. 387, 394 (1985).

[73] *Jones v. Barnes*, 463 U.S. 745, 751–54 (1983).

[74] Commissioner's Recommendation, p. 3.

[75] *Moawad v. Anderson*, 143 F.3d 942, 946 (5th Cir. 1998) (court give "great deference to counsel's assistance, strongly presuming that counsel exercised reasonable professional judgment.") (citations omitted).

be considered deficient for failing to advance a meritless argument on appeal, Petitioner has not shown that federal habeas relief is warranted as to Claims 1, 2, or 2(B).

> 2. *Claim 1 (C): Ineffective Assistance of Appellate Counsel and Claim (4): Irreconcilable Conflict with Trial Counsel*

In Claim 4, Petitioner contends that his Sixth Amendment right was violated when the trial court compelled Petitioner to proceed with trial after he became embroiled in an irreconcilable conflict with his retained counsel. Petitioner claims the trial court effectively denied his right to choice of counsel.[76] In Claim 1(C), Petitioner contends that he received ineffective assistance of appellate counsel for failure to raise this issue on appeal. Petitioner characterizes his conflict with trial counsel as a "communication breakdown"[77] that led to Petitioner threatening his counsel with physical harm because Petitioner believed that his counsel was not asking trial witnesses the appropriate questions. Petitioner raised Claim 4 in his PCR Application. Despite Petitioner labeling Claim 4 as a deprivation of his Sixth Amendment rights, the trial court dismissed Claim 4 on state law grounds without any discussion of Petitioner's federal constitutional claim. Petitioner also raised Claim 1(C) in his PCR Application, but the trial court failed to address Claim 1(C) when dismissing the PCR Application.[78]

At trial, during the cross-examination of Sergeant Chris Johnson, Petitioner signaled to the trial court that he wished to speak.[79] The trial judge excused the jury from the courtroom and Petitioner spoke to the trial judge over his counsel's objection.[80] Petitioner asked the court if he

---

[76] R. Doc. 1-1, p. 7.

[77] *Id.*

[78] When the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to an unencumbered opportunity to make his case before a federal judge. *See Johnson v. Williams*, 568 U.S. 289, 303 (2013). Claims 1(C) and 4 fail whether the analysis is deferential or *de novo*.

[79] Tr. Trans., p. 353.

[80] *Id.* at 358.

could terminate his retained counsel and continue with a public defender because his counsel was asking ineffective questions. Petitioner's counsel asked for a mistrial and asked to withdraw. The trial judge denied the requests.[81] Immediately thereafter, during a recess, it was reported to the trial judge by deputies that Petitioner threatened to physically harm his trial counsel.[82] Petitioner admitted he made the threat when questioned by the trial judge.[83] The trial court decided to proceed with the trial upon securing Petitioner's agreement that he was not going to harm trial counsel and upon determining that a deputy would be seated between Petitioner and counsel. Petitioner asked if he could still consult with trial counsel to which the trial court responded that Petitioner was permitted to talk with trial counsel.[84]

Petitioner contends that the trial court's decision to continue the trial over his objection to counsel violated his Sixth Amendment right to counsel of his choice. The Sixth Amendment right to counsel in a criminal proceeding has long been construed to include a criminal defendant's qualified right to retain counsel of the defendant's own choosing.[85] However, the Sixth Amendment does not afford a defendant an absolute and unqualified right to counsel of choice even when counsel is retained.[86] Rather, what is required is that the defendant be given a fair or reasonable opportunity to obtain particular counsel.[87] An arbitrary or unreasonable action that impairs the effective use of counsel of choice may violate a defendant's constitutional right to

---

[81] *Id.* at 358-359.

[82] *Id.* at. 359-361.

[83] *Id.* at. 360.

[84] *Id.* at 363.

[85] *See Newton v. Dretke,* 371 F.3d 250, 255–56 (5th Cir. 2004); *United States v. Hughey,* 147 F.3d 423, 429 (5th Cir. 1998).

[86] *See United States v. Dinitz,* 538 F.2d 1214, 1219 (5th Cir. 1976).

[87] *See United States v. Paternostro,* 966 F.2d 907, 912 (5th Cir. 1992).

19

counsel of choice.[88] The counsel of choice theme of the Due Process Clause is qualified and may be made subject to competing concerns about the effectiveness of the adversarial process.[89] Further, the right to choose counsel may not be subverted to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice.[90] "A defendant cannot assume that the right to choose counsel affords 'the right to obtain a delay at this whim and caprice, or to obtain a reversal because he was unable to frustrate justice.'"[91] "Rather, the proper exercise of the trial court's discretion requires a delicate balance between the defendant's due process right to adequate representation by counsel of his choice and the general interest in the prompt and efficient administration of justice."[92]

Petitioner argues that the trial court should have granted his mid-trial motion to substitute counsel and his retained counsel's motion to withdraw. There has been no showing that the denial of these motions was unreasonable or arbitrary. To the contrary, the facts and circumstances here indicate that the trial court properly denied the motions to substitute and withdraw. At the time Petitioner sought to terminate his retained counsel, jury selection was complete, opening statements had been conducted, and eight of fourteen prosecution witnesses had completed their testimony. Petitioner's counsel was cross-examining the ninth prosecution witness when Petitioner first signaled to the trial court that he was dissatisfied with his attorney.

During a recess that followed, Petitioner verbally threatened to physically harm his counsel within earshot of courtroom deputies, who reported the incident to the trial judge. Indeed, it was

---

[88] *Hughey*, 147 F.3d at 429 (citations omitted).

[89] *Id.* at 429.

[90] *Gandy v. Alabama*, 569 F.2d 1318, 1324 (5th Cir. 1978) (citations omitted).

[91] *Id.*, citing *United States v. Grow*, 394 F.2d 182, 210 (4th Cir.), cert. denied, 393 U.S. 340 (1968).

[92] *Id.* (citation omitted).

20

Petitioner's own threatening behavior that created the circumstance he now wishes to rely on, in part, for habeas relief as to this claim.

Petitioner's trial counsel was retained, however, Petitioner attempted to terminate his lawyer's services mid-trial and asked for a public defender.[93] The right to counsel of choice is nevertheless implicated.[94] However, to discharge his retained counsel a defendant must still show that his request will not delay court proceedings, prejudice the parties or disrupt the orderly process of justice.[95] Under the circumstances, given that the parties were deep into trial, Petitioner's right to counsel of choice was required to give way to the orderly administration of justice.[96]

As for Claim 1(C), ineffective assistance of appellate counsel,[97] Petitioner must prove that he would have prevailed on appeal had his appellate counsel raised the issue of conflict with his counsel. As discussed above, neither Petitioner's right to counsel of choice nor his right to effective assistance of counsel was violated. Because Petitioner makes no showing that he would have prevailed on appeal under this theory. Claim 1(C) is also without merit.

### 3. Claim (5): Denial of Right to Testify

In Claim 5, Petitioner contends that the trial court denied his right to testify. Petitioner raised this claim in his PCR Application. The trial court dismissed the claim on the grounds that Petitioner validly waived his right to testify. At the close of the prosecution's case, Petitioner's

---

[93] Tr. Trans., pp. 358-359.

[94] *See United States v. Bell*, No. 95-264, 2016 WL 5089114, at **3-4 (5th Cir. 2016).

[95] *Id.* at *8.

[96] *United States v. Terry*, 449 F.2d 727 (5th Cir. 1971). Petitioner's primary complaint regarding trial counsel's alleged failure at this point was that trial counsel was not asking the questions of witnesses that Petitioner wanted to ask. Trial counsel's failure to ask Petitioner's questions is a non-issue because Petitioner was allowed to proffer the questions he wanted asked of the witnesses outside the presence of the jury, so those questions would be preserved for appeal. Tr. Trans., pp. 367-70.

[97] As noted above, review of this claim is *de novo* because the Commissioner failed to consider the federal claim during post-conviction relief. The claim is discussed in this section, however, to aid the reader.

trial counsel advised the court that Petitioner did not wish to testify. The trial judge advised

Petitioner that he had the right to testify, and it was his decision alone. Immediately thereafter, the

following colloquy between the trial judge and Petitioner occurred:

> Petitioner:     I understand. I really do want to testify in my own trial, but on the way my lawyer has presented itself and the irrational way about asking the proper questions on my behalf. You know what I'm saying? Of course, my opinion. I feel he won't ask the proper questions on my defense. You know what I'm saying? So, I don't want to say something that the state can use, again. You know what I'm saying?
>
> The Court:     Very well. Then I take it, from your statement, that in addition to the complaint, you've decided not to testify?
>
> Petitioner:     Exactly.[98]

Petitioner contends that his right to testify was denied because the conflict with his attorney left

him "with paranoia and strong distrust for his counsel," which caused him not to testify.[99]

Specifically, Petitioner contends that he feared his attorney would ask questions that would have

"worked in the state's favor."[100]

Respondent argues that the Court lacks jurisdiction over this claim because Petitioner's

claim rests solely on state law grounds. Specifically, Respondent argues that Petitioner never fairly

presented a federal claim to the state court because Petitioner only cited Louisiana precedent on

this issue, *State v. Hampton*,[101] which is a different and less onerous standard than a federal claim

under *Strickland v. Washington*.[102]   In *Johnson v. Cain*,[103] the Fifth Circuit was presented with the

---

[98] Tr. Trans., p. 465.

[99] R. Doc. 1-1, p. 8.

[100] *Id.* at 9.

[101] 2000-0522 (La. 3/22/02), 818 So.2d 720.

[102] R. Doc. 12, pp. 30-31.

[103] 712 F.3d 227 (5th Cir. 2013).

question of whether a petitioner fairly presented a federal claim at the state court level for "denial of the right to testify" when his argument at the state court level focused on the Louisiana standard announced in *State v. Hampton*. The Fifth Circuit declined to squarely address the issue in *Johnson*, finding that the petitioner disclaimed his federal argument at least twice at the state court level.[104] However, the Fifth Circuit noted that labeling the claim as federal, citing the federal source of the claim, or referencing a case that decided such a claim on federal grounds were sufficient ways to fairly present the claim in a state habeas petition.[105]

In his PCR Application, Petitioner labeled Claim 5 as a federal claim, with the heading:

> Petitioner was denied his constitutional right to testify on his own behalf at trial in violation of his Fifth, Sixth, and Fourteenth amend to the U.S.C. and Article 1. section 16 of the Louisiana Constitution.

Accordingly, Petitioner fairly presented a federal claim to the state court, and this Court has jurisdiction to review the merits.

"[I]t cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense."[106] A valid waiver of the right to testify must be "knowing, voluntary and intelligent."[107] A violation of this right only occurs if the "final decision that [Petitioner] would not testify was made against his will."[108]

Petitioner does not argue that the decision not to testify was made against his will. The record reflects that Petitioner was advised by the trial judge that he had the right to testify and that

---

[104] *Id*. at 231-232.

[105] *Id.* at 232 n.4, citing *Baldwin v. Reese*, 541 U.S. U.S. 27, 32 (2004) ("The Supreme Court has instructed, albeit in dictum, that labeling a claim as federal, citing the federal source of that claim, or referencing a case deciding such a claim on federal grounds—all of which Johnson did here—is enough to satisfy the fair presentment requirement of AEDPA's exhaustion bar …."). AEDPA is the Antiterrorism and Effective Death Penalty Act of 1996.

[106] *Rock v. Arkansas,* 483 U.S. 44, 49 (1987).

[107] *Jordan v. Hargett,* 34 F.3d 310 (5th Cir. 1994).

[108] *Id.* at 312.

it was his decision, alone. The record also reflects that Petitioner weighed the pros and cons of testifying and ultimately decided against it. Petitioner's dissatisfaction with, and distrust of, his retained trial attorney did not invalidate his knowing, intelligent, and voluntary waiver of the right. The ultimate decision not to testify belonged to Petitioner, as he was expressly advised by the trial court. Accordingly, Petitioner has not shown that the trial court's decision to dismiss this claim was neither contrary to, nor an unreasonable application of federal law.

    4.   *Claim 6(B): Ineffective Assistance of Counsel for Failing to Subject State's Case to "Meaningful Adversarial Testing"*

Petitioner contends in Claim 6(B) that trial counsel failed to subject the state's case to "meaningful adversarial testing." Particularly, Petitioner claims that his trial counsel failed to adequately cross-examine Angela Jarvis. Petitioner asserts that his trial counsel should have pressed Angela Jarvis about her inability to identify him for two months. Petitioner also asserts that his trial counsel should have cross-examined Angela Jarvis about her testimony that she saw Petitioner when stopped at the intersection of Brady and Fairchild, as these two streets do not intersect. Claim 6(B) was asserted in Petitioner's PCR Application.

It appears that Petitioner is referring to language from *United States v. Cronic*,[109] which set forth circumstances in which prejudice is presumed in an ineffective assistance of counsel claim. One of those circumstances is when counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing."[110] To the extent that Petitioner is asserting that prejudice should be presumed in connection with Claim 6(B), this assertion is without merit. "'A constructive denial of counsel occurs ... in only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was *in effect denied any meaningful*

---

[109] 466 U.S. 648 (1984).

[110] *Bell v. Cone*, 535 U.S. 685, 696 (2002).

*assistance at all.*"[111] For *Cronic* to apply, "the attorney's failure must be *complete.*"[112] A case does not come under *Cronic* merely because counsel failed to "oppose the prosecution ... at specific points" in the trial.[113] It is not enough for the defendant to show mere "shoddy representation" or to prove the existence of "errors, omissions, or strategic blunders" by counsel.[114] "[B]ad lawyering, regardless of how bad, does not support the per se presumption of prejudice."[115]

Petitioner has not shown that the state court decision denying his claim on this ground was an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence presented at the trial. Petitioner's counsel did not entirely fail to subject the prosecution's case to meaningful adversarial testing as Petitioner only complains in this ground for error about two specific instances where trial counsel allegedly failed: not cross-examining Jarvis effectively enough on the fact that it took her two months to identify him and the fact that the location where Jarvis says she saw Petitioner is streets that do not intersect. Further, as a factual matter, trial counsel did elicit testimony from which the jury could conclude that Jarvis could not immediately identify Petitioner.

Jarvis testified in response to trial counsel's questions that she had her head down, was playing dead, and it was dark.[116] Jarvis also testified on cross-examination that she did not get the license plate of the vehicle Petitioner was driving, nor could she more specifically describe it than that it was a "white SUV."[117] Trial counsel also elicited from Jarvis that she met with police several

---

[111] *Jackson v. Johnson,* 150 F.3d 520, 525 (5th Cir. 1998), quoting *Childress v. Johnson,* 103 F.3d 1221, 1229 (5th Cir.1997) (emphasis added).

[112] *Bell,* 535 U.S. at 686 (emphasis added).

[113] *Id.*

[114] *Jackson,* 150 F.3d at 525.

[115] *Id.* (citations omitted).

[116] Tr. Trans., p. 263.

[117] *Id.*

times, was shown multiple photo lineups, and spoke with her family in the interim, suggesting that this could have influenced her identification of Petitioner.[118] Finally, trial counsel elicited testimony from Jarvis, over the state's objection, that she had been previously convicted of felony theft charges.[119] Detective Christopher Rudy testified in response to trial counsel's questions that he met with Jarvis on the evening of the Elmgrove murder and she did not identify anyone and did not know who was involved.[120] Detective Rudy further testified that Jarvis was shown four photographic lineups and it was not until two months later that she finally identified someone.[121] Petitioner's counsel made the point through these witnesses that it took Angela Jarvis some time to identify Petitioner to police and specifically elicited from Detective Rudy that it took Angela Jarvis two months to identify the alleged perpetrator. Accordingly, Petitioner's counsel elicited beneficial testimony through cross-examination on this issue and Petitioner has not shown that counsel's performance was deficient.

Petitioner also complains that his counsel failed to cross-examine Angela Jarvis on her testimony regarding the intersection of Brady and Fairchild streets. Jarvis testified that she got a good look at Petitioner when her vehicle was stopped at the intersection of Brady and Fairchild. Petitioner contends that Brady and Fairchild streets do not intersect. Assuming the two streets do not actually intersect, Petitioner cannot demonstrate that his counsel's performance was deficient or that he was prejudiced by his counsel's failure to cross-examine Jarvis on this point. As noted by the state court with regard to the sufficiency of the evidence claim, even if Angela Jarvis was mistaken about the names of the streets at the intersection, a jury still could have believed that

---

[118] Tr. Trans., p. 264.

[119] Tr. Trans., p. 266.

[120] Tr. Trans., p. 249.

[121] *Id.*.

Jarvis had a clear look at Petitioner at an intersection as her testimony was very clear on this point.[122] It was likely a strategy decision by Petitioner's counsel to focus cross-examination on points that were more likely to create doubt that Jarvis correctly identified Petitioner as the perpetrator. Cross-examination of Jarvis on an inconsequential matter, such as street names, may have undermined the defense's credibility with the jury. Under these circumstances, it cannot be said that trial counsel's failure to cross-examine Angela Jarvis on the street names was so deficient as to rise to the level of ineffective assistance. Nor has Petitioner demonstrated a reasonable probability the verdict would have been different if his counsel had cross-examined Jarvis on the street names. As such, Claim 6(B) is without merit.

5. *Claim (7): Petitioner's Due Process Rights were Violated when State Improperly Commented on Confession in Opening Statement*

In Claim 7, Petitioner asserts that his Fourteenth Amendment due process rights were violated when the prosecutor suggested in her opening statement that he confessed to Robin Johnson. The trial court dismissed Petitioner's claim on the following grounds:

> The claims of prosecutorial conduct should be dismissed as the statements did not affect the fairness of the trial. In *United States v. Young*, the U.S. Supreme Court held that a criminal conviction is not to be lightly overturned on the basis of a prosecutor's conduct alone. The statements are to be viewed in context and whether this conduct affected the fairness of the trial. In Louisiana it is well settled that even if a prosecutor exceeds its bounds, the Court will not reverse a conviction unless "thoroughly convinced" that the argument influenced the jury and contributed to the verdict. Accordingly, I recommend that the State's objections be granted since it cannot be said that the prosecutor's conduct affected the integrity and fairness of the trial.[123]

---

[122] Tr. Trans., p. 256 (Q. Okay. Did you get a good look at who was driving that SUV? A. Yes. We was face-to-face because I was diving and the truck was coming in. I was at the stop sign and the truck was this way, and we was face-to-face and he me in my face and I looked him in his face.); p. 261 (Q. Okay. Now, we heard some testimony that a couple of months passed since Detective Rudy showed you the initial lineups and these, right? A. Uh-huh. Q. Is there any question in your mind that those two individuals you identified are the same that you saw on June 29th? A. I know they were.); p. 268 (Q. So, you got a really good look at Preston Nelson? A. Yes, I did. Q. And there is no question in your mind that he was, in fact, the driver of that vehicle? A. No question at all.).

[123] Commissioner's Recommendation, pp. 8-9.

27

CASE 3:18-cv-00339-JWD-EWD    Document 71    02/25/26    Page 28 of 39

Because the trial court identified the correct legal standard, namely whether the misconduct rendered the trial fundamentally unfair, and did not erroneously apply it to the facts, the Court cannot disturb this ruling.[124] Petitioner's claim for prosecutorial misconduct also fails if reviewed independently by this Court.

Federal habeas relief will be granted on grounds of prosecutorial misconduct "only if the prosecutors remarks 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[125] To satisfy this requirement a petitioner must show "that the [prosecutor's] misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks."[126] The prosecutorial remarks "must be more than undesirable or condemnable; they must be so pronounced and persistent as to cast serious doubts on the verdict,"[127] and must have been a "crucial, critical, highly significant factor in the jury's determination of guilt."[128]

Referencing Petitioner and his brother, G'Quan Baker, the prosecutor made the following remark during her opening statement: "Robin Johnson will tell you that these two men have told her that they are in fact the ones that committed the homicide of Jessica Parker and Kevin Bowie."[129] As the conduct about which Petitioner complains is limited to the opening statement,

---

[124] *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

[125] *Geiger v. Cain*, 540 F.3d 303, 308 (5th Cir. 2008), quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Importantly, this Court is not focused on what may be considered prosecutorial misconduct under Louisiana law; rather the Court is solely concerned with what constitutes prosecutorial misconduct under federal law.

[126] *Geiger*, 540 F.3d at 308, quoting *Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988).

[127] *United States v. Rodriguez*, 43 F.3d 117, 124 (5th Cir. 1995).

[128] *Ortega v. McCotter*, 808 F.2d 406, 410 (5th Cir. 1987).

[129] Tr. Trans., p. 197.

28

the remarks were not persistent nor pronounced.[130] There was also other evidence of guilt that, though circumstantial, was not *insubstantial*.

With respect to the Kingfisher murders, the state introduced evidence at trial that Petitioner admitted in his two recorded interviews with the police that he was in the vehicle with the victims the night that they were shot and that it was possible he was with the victims close in time to when they were murdered.[131] Evidence at trial demonstrated that Robin Johnson identified Petitioner as the person who appeared with G'Quan Baker at her apartment shortly after the murders, and that the two were "jumping around" and "happy."[132] Johnson also testified that Petitioner and Baker both had guns at that time and were cleaning them off.[133] Darion Burkes further testified that he purchased a gun from Nelson after the murders.[134] That gun matched the 9mm shell casings that were recovered from the scene of the Kingfisher murders, including one removed from Kevin Bowie's body and one from Jessica Parker's clothing.[135] This evidence is not so insubstantial that the conviction would not have occurred but for the prosecutor's improper remark during the opening statement. Accordingly, this claim is without merit.

---

[130] *See Cho v. Cain*, No. 05-2725, 2007 WL 4219403, at *17 (E.D. La. Nov. 26, 2007) ("The remarks were confined to one part of the closing argument, and thus, they were not persistent or pronounced misconduct."). Though other mentions of the alleged confession to Johnson were made in trial and in closing arguments, the only ground for error that is exhausted and reviewable by this Court is the remark made in opening statements, which is discussed more fully, below.

[131] *See* First Circuit recitation of facts, *supra*; Tr. Trans., pp. 348-350.

[132] Tr. Trans.*, pp. 430-434.

[133] *Id.* at 432

[134] Tr. Trans., pp. 372-385.

[135] *Id.* at 397-400.

6. *Claim 9: Louisiana Code of Criminal Procedure Article 465 is Unconstitutional*

In Claim 9, Petitioner asserts that his indictment was defective because it did not inform him of his role in the crimes. Petitioner raised this issue in his PCR Application. In denying this claim, the trial court made the following findings of fact:

> The record reflects that Petitioner's Grand Jury indictment consists of three pages of information charging him with all the crimes. It was returned in open court on October 19, 2011 and signed by the jury foreman. The minutes of the grand jury are housed in a book stored in the administrative office of the 19th JDC.

The trial court determined that the Petitioner was fully informed of the offenses for which he was charged and dismissed the claim as contrary to the record and lacking merit.

The sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction.[136] A challenge to the sufficiency of a state indictment is valid for federal habeas purposes only when the indictment is so defective that under no circumstances could a valid state conviction result from facts provable thereunder and that this can be determined "only by looking to the law of the state where the indictment was issued."[137] Notwithstanding, when a state court has found that an indictment is sufficient under state law, a federal court need not address this issue.[138] This conclusion follows from the "due deference to the state court's interpretation of its own law that a defect in an indictment does not deprive a state trial court of jurisdiction."[139] To this end, a federal habeas court will not consider such claims "[w]hen it appears ... that the sufficiency of the

---

[136] *Liner v. Phelps*, 731 F.2d 1201, 1203 (5th Cir. 1984), quoting *Branch v. Estelle*, 631 F.2d 1229, 1233 (5th Cir. 1980).

[137] *Id.* at 1203, *quoting Johnson v. Estelle*, 704 F.2d 232, 236 (5th Cir. 1983).

[138] *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994); *Millard v. Lynaugh*, 810 F.2d 1403, 1407 (5th Cir. 1987).

[139] *Davis v. Craig*, 66 F.3d 319, 1995 WL 534730, at *3 (5th Cir. 1995), quoting *McKay*, 12 F.3d at 69.

indictment was squarely presented to the highest court of the state on appeal, and that court held that the trial court had jurisdiction over the case."[140]

Petitioner asserted Claim 9 in his PCR Application. The claim was ultimately submitted to the Louisiana Supreme Court for review, which was denied. By refusing to grant Petitioner relief, the Louisiana Supreme Court necessarily, though not expressly, concluded that the Louisiana courts had jurisdiction over the case and that the indictment was sufficient for that purpose.[141] Accordingly, Claim 9 is not properly before the Court on habeas review.

### C.  De Novo Review - Claim 6

Because the March 12, 2021 Order and Reasons,[142] determined that the state court's dismissal of Nelson's Claim 6 was based on an unreasonable determination of the facts in light of the evidence presented, a *de novo* review of this claim is conducted based on the state court record and the testimony received at the November 2021 evidentiary hearing in this Court.[143] The matter was referred on January 14, 2021 and the evidentiary hearing was ordered shortly thereafter. Although the Order and Reasons discusses trial counsel's failure to move for mistrial during the prosecution's opening statement and failure to object or move for mistrial once Robin Johnson testified that Petitioner never made any statement to her about the murders,[144] a thorough review of the record, further research, and the evidentiary hearing require the conclusion that the sole

---

[140] *See Alexander v. McCotter*, 775 F.2d 595, 599 (5th Cir. 1985).

[141] *See Landor v. Cain*, No. 13-5515, 2014 WL 7342361, at *19 (E.D. La. Dec. 23, 2014), citing *Alexander,* 775 F.2d at 598 and *Murphy v. Beto*, 416 F.2d 98, 100 (5th Cir. 1969) ("[J]urisdiction to try an offense includes jurisdiction to determine whether the offense is properly charged.").

[142] R. Doc. 18.

[143] When the district court determines, solely on the state court record, the requirements of Section 2254(d) have been met, *Cullen v. Pinholster's* limitation on federal evidentiary hearings does not apply, the state court decision is no longer entitled to deference, and the district court is entitled to resolve the claim without the deference normally required under AEDPA. 563 U.S. 170 (2011) and *see Smith v. Cain*, 708 F.3d 628, 635 (5th Cir. 2013).

[144] R. Doc. 18, pp. 7-8.

claim properly before the Court—whether counsel was ineffective for failing to object to the opening remark by the prosecutor referring to the inculpatory statement—is without merit.[145]

Petitioner did not raise claims in any state court regarding trial counsel's failure to move for mistrial during the prosecution's opening statement or failure to object or move for mistrial once Robin Johnson testified that Petitioner never made any statement to her about the murders. Instead, Nelson has consistently only complained of trial counsel's ineffectiveness for failing to lodge an objection to the prosecutor's opening remark referring to the inculpatory statement, not for failing to address the prosecution's actions at any other point during the trial.[146] To exhaust in accordance with § 2254, a petitioner must fairly present the factual and legal basis of any claim to the highest available state court for review before raising it in federal court.[147] Ineffective assistance of counsel claims must point to the specific acts or omissions of the attorney that the petitioner alleges rendered counsel ineffective.[148] Though the Court is not *per se* barred from raising claims *sua sponte*, AEDPA only authorizes a district court to *deny* relief on an unexhausted claim.[149] A district court may not *grant* relief on an unexhausted claim, unless the state has waived the exhaustion requirement, which the state has not done here. To do so would convert the petition to a "mixed" petition containing both exhausted and unexhausted claims which must be

---

[145] Although the March 12, 2021 Ruling and Order states that "Petitioner has made a prima face case for ineffective assistance of counsel as to Claim 6" (R. Doc. 18, p. 11), that finding was premature. There is no prejudice to Petitioner, however, because, although Petitioner claims in his Post-Hearing Brief that he is only required to show prejudice (R. Doc. 57, p. 1), trial counsel was questioned by Petitioner at the evidentiary hearing on the first prong of *Strickland*, deficient performance, as well. Additionally, the Ruling and Order was clear that the determination was based on a preliminary analysis of the information then before the Court, which was subject to change.

[146] *See* R. Doc. 1-1, pp. 9-10; PCR Application, pp. 11-12.

[147] *See Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993); *Richardson v. Procunier*, 762 F.2d 429, 432 (5th Cir. 1985); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982).

[148] *See Knighton v. Maggio*, 740 F.2d 1344, 1349 (5th Cir. 1984) ("One claiming ineffective assistance of counsel must identify specific acts or omissions. [ ] The particular professional failure must be pled and proven.").

[149] *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *see also Jones*, 163 F.3d 285; *Nobles*, 127 F.3d at 423.

dismissed.[150] In other words, were this Court to *sua sponte* raise unexhausted claims on Petitioner's behalf and grant relief, his entire Petition would be subject to dismissal without prejudice.[151] Mindful of this, review at this juncture is constrained only to the claim Petitioner actually brought.

In Claim 6, Nelson contends his trial counsel was ineffective because he failed to object to the prosecutor's opening statement where she told the jury, "Robin Johnson will tell you that these two men have told her that they are in fact the ones that committed the homicide of Jessica Parker and Kevin Bowie."[152] As noted by this Court in the Order and Reasons, in its disposition of Petitioner's post-conviction application, the state court identified the correct legal standard for Petitioner's ineffective assistance of counsel claim, *i.e., Strickland*, but based its analysis under *Strickland* on an unreasonable determination of the facts in light of the evidence presented. Notably, the state court disposed of Petitioner's claim based on a determination that the allegedly inculpatory statement referenced by the prosecutor in the opening statement *had actually been introduced into evidence.* The state court record affirmatively demonstrates: (1) Petitioner never made an inculpatory statement to Robin Johnson, and (2) no inculpatory statement was admitted into evidence at trial. Accordingly, the Court reviews the claim *de novo* without deference to the state trial court determination.

To establish that his legal representation at trial fell short of the assistance guaranteed by the Sixth Amendment, a convicted defendant must meet the two-pronged test set forth by the Supreme Court in *Strickland*.[153] The defendant must show that his counsel's performance was both

---

[150] *Alexander v. Johnson*, 163 F.3d 906, 908 (5th Cir. 1998), citing *Rose v. Lundy*, 455 U.S. 509, 510 (1982) and *Whitehead v. Johnson*, 157 F.3d 384, 387 & n. 6 (5th Cir.1998).

[151] *See Alexander*, 163 F.3d at 909 (vacating and remanding case to district court with instructions to dismiss habeas petition without prejudice where district court granted relief on ground raised *sua sponte*).

[152] Tr. Trans., p. 197.

[153] 466 U.S. 668 (1984).

deficient (that counsel did not provide reasonably effective assistance under prevailing professional norms) and prejudicial (that errors by counsel "actually had an adverse effect on the defense").[154]  The former component of the test authorizes only "highly deferential" judicial scrutiny, requiring the defendant to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.[155] As to the latter component, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.  Rather, the defendant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[156]

A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance.[157] The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[158]

The opening statement by the prosecutor that Robin Johnson would testify during trial that Petitioner and his brother, G'Quan Baker, told her they committed the Kingfisher murders was not correct. Yet, Petitioner's trial counsel, A. Hays Town, III ("Town"), did not object during the prosecutor's opening statement.[159]

Despite the erroneous remark by the prosecutor, Petitioner has not shown that his trial counsel was ineffective for failing to object to the remark in the prosecutor's opening statement regarding Robin Johnson's testimony. Failing to object to comments made in opening statements

---

[154] *See Anderson v. Collins*, 18 F.3d 1208, 1215 (5th Cir. 1994), citing *Strickland*, 466 U.S. at 686-89, 693.

[155] *Id*., citing *Strickland*, 466 U.S. at 689.

[156] *See Anderson*, 18 F.3d at 1215, citing *Strickland*, 466 U.S. at 693.

[157] *See Harrington v. Richter*, 562 U.S. 86, 104 (2011), citing *Strickland,* 466 U.S. at 689.

[158] *See Harrington*, 562 U.S. at 104, citing *Strickland*, 466 U.S. at 687.

[159] R. Doc. 56, p. 59.

34

often does not rise to the level of ineffective assistance of counsel because jurors are consistently instructed that the opening statements are not to be considered as evidence, undermining any "facts" laid out in opening statements that are not proved through the course of trial.[160] More persuasive in this case is the fact that Town testified at the evidentiary hearing that the decision not to object was strategic, stating "[b]y tradition, it's just an argument. It's not evidence and, therefore, it's not to be weighed into anything. It's just—they're required—y'all are required to do it. You got to, you got to tell them how you're going to get, meet your burden."[161] In the same line of questioning, Town noted "You—you—you make emphasis on certain points that are, certain items."[162]

"'[C]onscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'"[163] "[S]trategic choices … are *virtually unchallengeable*[.]"[164] Town testified he made the strategic choice not to object to the remark in opening statements because his strategy, generally, is to allow the prosecutor to give their opening statement without objection as opening statements are not evidence. Trial counsel's strategic choice not to lodge an objection with respect to one remark made in the prosecutor's opening

---

[160] *See, e.g., Hawthorne v. Vannoy*, No. 20-3017, 2023 WL 8195617, at *29-30 (E.D. La. Oct. 19, 2023) (denying IAC claim for failing to object to comments made during opening statements noting that jurors are instructed that those statements are not evidence).

[161] R. Doc. 56, p. 78.

[162] R. Doc. 56, p. 79.

[163] *Geiger*, 540 F.3d at 309, citing *Johnson v. Dretke,* 394 F.3d 332, 337 (5th Cir. 2004) (quoting *United States v. Jones,* 287 F.3d 325, 331 (5th Cir.2002)); *see also Jones,* 287 F.3d at 331 ("'Informed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed.'" (quoting *Lamb v. Johnson,* 179 F.3d 352, 358 (5th Cir.1999))); *Yohey v. Collins,* 985 F.2d 222, 228 (5th Cir. 1993) ("Given the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices.").

[164] *Cf. Strickland*, 466 U.S. at 690 (emphasis added).

statement was not "so ill chosen" that it "permeate[d] the entire trial with obvious unfairness."[165] To the contrary, other courts have found similar choices sound trial strategy.

In *Carter v. Banks*, the court found that the failure to object to the prosecution's improper arguments in opening was reasonable trial strategy, notwithstanding that the objection likely would have been sustained because the prosecutor argued facts not in evidence. "Counsel's decision not to object during opening statement could be viewed as reasonable trial strategy, to avoid annoying the jury or aligning the jury against the accused at the outset of trial."[166] Similarly, in *Cook v. Stephens*, the court noted, "[i]t is not unreasonable, as a matter of trial strategy, for an attorney to refrain from objecting to opening or closing statements unless the comments are significantly prejudicial. Interrupting an attorney during an opening statement risks the possibility of annoying the jurors and aligning them against the objecting attorney. Likewise, objecting may create the appearance the attorney is attempting to hide something. Lastly, but importantly, objecting can have a tendency to focus the jury on the objected-to statement."[167] Trial counsel's strategic choice in this case to not object to the brief remark in the prosecutor's opening statement was not constitutionally ineffective.[168]

---

[165] *Geiger*, 540 F.3d at 309.

[166] No. 18-79, 2021 WL 11525629, at *5 (S. D. Miss. Feb. 10, 2021), citing *Cunningham v. Wong*, 704 F.3d 1143, 1160 (9th Cir. 2013) ("withholding objections to an opponent's opening statement is acceptable defense strategy."); *Perkins v. McKee*, 411 Fed. App'x 822, 829 (6th Cir. 2011) (failure to object to opening statement not prejudicial); *Pisciotti v. Washington*, 143 F.3d 296, 301 (7th Cir. 1998) (improper opening statement argument does not create prejudice where judge advised jury that statements were not evidence); *Seehan v. State of Iowa*, 72 F.3d 607, 610 (8th Cir. 1995) (sound trial strategy to "avoid offending or alienating the jury").

[167] No. 12-26, 2015 WL 1058107, at *4 (N.D. Tex. March 10, 2015).

[168] *McFadden v. Steele*, No. 12-212, 2015 WL 928468, at *8 (E.D. Mo. March 4, 2015) (citations omitted) (defense counsel testified that his choice to not object to statements made during opening or closing argument was a matter of trial strategy, and the court held that "Whether to object during the prosecution's opening or closing argument is a matter of trial strategy," noting that "[s]trategy decisions like these are 'virtually unchallengeable.'"). *See also Strickland*, 466 U.S. at 690 (strategic choices are virtually unchallengeable).

Additionally, Petitioner cannot show prejudice from his trial counsel's failure to object to the prosecutor's comment in the opening statement. Courts consistently find that failing to object during opening statements does not prejudice defendants in any way because judges instruct juries that opening statements are not evidence and that jurors should only consider the evidence in rendering their verdict; as jurors are presumed to follow their instructions, there cannot be prejudice.[169] The trial judge so instructed the jury in this case.[170] To find prejudice despite the jury instruction would be to imply that jurors cannot follow instructions, and this Court should decline to do so. Even setting aside the instruction limiting prejudice, there was sufficient evidence of guilt such that Petitioner was not prejudiced.[171] Additionally, although the prosecutor suggested in the opening statement that Robin Johnson would testify that Petitioner and Baker confessed regarding the Kingfisher murders, the prosecutor also told jurors in the opening statement that Petitioner had *not* confessed to the murders.[172] Accordingly, Petitioner's ineffective assistance of counsel claim fails on both prongs of *Strickland* with respect to trial counsel's failure to object to the remark made in opening statements.

---

[169] *See Luna v. Dretke*, No. 04-66, 2004 WL 1908235, at *6 (N.D. Tex. Aug. 26, 2004) (because before the prosecution began its opening statement, the trial court advised the jurors that "what the lawyers say throughout this trial is not evidence," the effect of the remark, if any, was minimized, and petitioner could not show prejudice); *Evans v. Thaler*, No. 10-220, 2010 WL 8056694, at *25 (W.D. Tex. Nov. 9, 2010), report and recommendation adopted, 2011 WL 6153422 (W.D. Tex. Dec. 9, 2011) (where the opening statement incorrectly stated what some of the evidence would show, the court held "petitioner has not shown that his counsel's failure to object prejudiced him in any way. The trial judge instructed the jury to completely disregard any statements made by attorneys that were unsupported by the evidence, and jurors are presumed to follow their instructions.").

[170] *See* Tr. Trans., pp. 490-91 (instructing the jury that arguments of counsel, including those made in opening statements and closing remarks, are not evidence).

[171] *See* discussion regarding evidence of guilt at §II(B)(5), *supra*.

[172] Tr. Trans., pp. 196-197 ("You won't hear him confess to it, but he puts himself right there, right until these two people came to their demise.").

37

### D. Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."[173] Although Nelson has not yet filed a Notice of Appeal, the Court may address whether he would be entitled to a certificate of appealability.[174] Should Nelson try to appeal, a certificate of appealability should be denied.

A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right.[175] In cases where the federal court has rejected a petitioner's constitutional claims on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[176] In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."[177] Here, reasonable jurists would not debate the denial of Nelson's Petition or the correctness of the procedural or substantive rulings.

---

[173] 28 U.S.C. § 2253(c)(1)(A).

[174] *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

[175] 28 U.S.C. § 2253(c)(2).

[176] *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006).

[177] *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

### III.    RECOMMENDATION

As the grounds for error asserted are either procedurally defaulted or lack merit, **IT IS RECOMMENDED** that the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody,[178] filed by Petitioner Preston Nelson, be **DISMISSED WITH PREJUDICE** and that, if sought, a certificate of appealability be **DENIED.**

Signed in Baton Rouge, Louisiana, on February 25, 2026.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[178] R. Doc. 1.